## BRANIFF INVESTMENT COMPANY V. F. M. ROBERTSON.

No. 6838.   Decided March 27, 1935.
(81 S. W., 2nd Series, 45.)

*Harrell & Allison,* of Breckenridge, for plaintiffs in error.

The question of usury in this contract should be determined by construing all the instruments forming a part of the contract between the parties together and if by imputing to the parties an intention to make a legal contract, they are reasonably susceptible of a construction evidencing an intention on the part of the lender to collect no more than ten per cent interest in any event, the contract should be held to be untainted by usury. Clement v. Scott, 60 S. W. (2d) 258, writ refused; Foard County v. Sanderfer, 105 Texas, 420, 151 S. W., 523; 10 Texas Jur., 272.

*E. V. Hardwicke,* of Stamford, and *F. M. Robertson,* of Haskell, for defendant in error.

Considering the two notes involved and the deed of trust securing same and it appearing therefrom that it was the intention of the plaintiff in error in case of default to collect more than ten per cent interest on the money actually loaned, the contract was usurious. Building and Loan Assn. v. Griffin, 39 S. W,. 656; Prudential Ins. Co. v. Cheek, 259 U. S., 530, 66 L. Ed., 1044; National Mut. B. & L. Assn. v. Brahan, 193 U. S., 635, 48 L. Ed., 823; R. S., 1925, Arts. 1529, 1532 and 1536.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals.

Defendant in error, F. M. Robertson, brought this suit to cancel the interest on the loan involved herein on the ground of usury. Plaintiffs in error by cross action declared the entire debt due, and prayed for foreclosure. Judgment on trial before the court without a jury was for defendant in error. The Court of Civil Appeals affirmed the judgment. 74 S. W. (2d) 425. The borrower, Robertson, made application through the Braniff Investment Company for a loan of $3500 for ten years to be repaid in such manner as the lender might direct. No rate of interest is specified in the application. In due time the loan contract was consummated and the borrower received from the Investment Company the full amount of the loan applied for.

The borrower, instead of executing one note evidencing the amount of the loan and stipulating the rate of interest to be paid, executed two installment notes; one a first lien note for the full amount of the loan, and the other a second lien note covering a part of the interest to be paid over the period of the loan. Neither note specified the rate at which it was to bear interest prior to the maturities of the respective installments of each.

In the first lien note the promise to pay and the manner of payment are:

"To pay * * * principal sum of $3500.00, the same being money actually loaned together with interest thereon, and to pay in installments payable on the 15th day of the next ensuing and each and every successive month until 120 successive monthly installments have fallen due, and each installment to be in the sum of $43.75. The payment of all said installments by the payment of each on its due date without default and without prepayment shall be payment in full of the principal and interest evidenced thereby."

The provision of the $280 note relating to the same matters reads, "To be paid in one hundred twenty (120) equal installments of Two and 34/100 Dollars each, payable on the fifteenth day of the next ensuing and each and every successive month until the total number of said installments have fallen due."

The "after maturity" provision as to interest in the $3500 note reads, "All installments shall bear interest at 10 per cent per annum from the date due." The provision relating to the same matter in the $280 note reads, "All installments shall bear interest from maturity at the rate of 10 per cent per annum."

The stipulations in the $3500 note relating to the option of the holder in the event of default and his authority consequent upon the exercise thereof, reads:

"If three installments *herein* provided to be paid shall become delinquent, or if the holder become entitled to foreclose the Deed of Trust securing *this note* for any reason, * * * the holder *hereof* shall have the option to * * * declare the entire debt evidenced by this note immediately due and payable without notice, and may proceed to immediately collect the same, and it is agreed that by reason of said default upon the exercise of said option the interest on said *loan* shall be ten per cent per annum, and the balance due of principal and interest shall be arrived at as follows: Each payment theretofore made shall be accredited as of the date it was received by the holder *hereof* on the sum of the *then balance* and *accrued interest thereon.*" (Italics ours.)

The $280 note contains no stipulation relating to the holder's option upon default.

The $280 note stipulates also that it is "one of two notes of even date herewith * * * secured by a real estate deed of trust and the lien of this note is junior to the lien of the other of said two notes."

The only reference in the deed of trust to the option of the

holder upon default is a parenthetical statement contained in the clause relating to the application of the proceeds upon a sale of the land under the powers of the trust instrument, which will be hereinafter set out.

The description of the two notes contained in the deed of trust is as follows:

"One promissory note of $3500, dated February 17, 1928, payable in 120 successive monthly installments of $43.75 each.

"One subordinated real estate note of $280.00, dated February 17, 1928, payable in 120 successive monthly installments of $2.34 each, with interest thereon according to the terms of the notes, payable *as accrued."* (Italics ours.)

The deed of trust provision relating to the manner of payment of interest on the notes reads: "With interest thereon according to the terms of the notes, *said interest payable as it accrues."* (Italics ours.) The deed of trust contains the further provision that "Any amount expended for taxes shall be treated as expenses and costs of executing this trust."

Preliminary to procuring the loan under consideration the borrower, Robertson, made written application through defendant in error to procure for him a loan. The application reads in part:

"Braniff Investment Company, Oklahoma City, Oklahoma: I hereby agree to make through you either in your name or that of anyone whom you may represent, a loan of Thirty Five Hundred Dollars, for a term of 10 years, principal payable monthly, to bear interest at the rate of — per cent per annum, payable —— annually, * * * in such manner as the lender may direct."

The Court of Civil Appeals held the loan contract is usurious under the decisions cited, including Shropshire v. Commerce Farm Credit Co., 120 Texas, 400, 30 S. W. (2d) 282, 84 A. L. R., 1269. A contrary view was taken by the Amarillo Court of Civil Appeals in Shive v. Braniff Investment Co., 68 S. W. (2d) 564, and it was upon the conflict thus presented that the writ was granted.

The question here involved is whether the parties by the stipulations contained in the loan contract, fairly construed, intended thereby to provide a means of collection by the lender from the borrower of compensation for the use or detention of the money loaned, at a rate in excess of 10 per cent per annum.

■ It is necessary therefore to examine the loan contract in the light of the circumstances surrounding the parties and the considerations with which they were faced at the time they made the stipulations referred to. The contract consists of the two

notes and deed of trust above described, and all are to be construed as if contained in a single instrument.

The form of the contract, embodying two notes instead of one, appears to be the chief occasion of the present controversy. No interest rate was named in either note other than the "after maturity" rate. It is apparent from the application as set out in part above that a specified rate was not of primary concern to the parties. One of the considerations of the borrower as reflected in the application was that the amount, $3500.00, should be payable in monthly installments over a period of 10 years. The chief concern of a borrower about to obligate himself upon this type of contract is that the amount of the installment which he promises to pay monthly for 120 months shall be commensuate with his ability to pay. An important consideration of the lender appears to have been to take such evidences of the borrower's obligation under the loan contract as to enable him to allocate in a separate instrument a part of the interest to be earned. It appears from the application that the borrower was willing to agree to make repayment of the money in monthly installments in such manner as the lender might direct. At any rate the evidences of the indebtednesses, as appears from the notes above described, are so framed as to disclose that the parties agreed upon the sum of $46.09 as the amount to be paid by the borrower monthly for 120 months, and further, as stipulated in the $3500 note, that the payment of each installment thereof in the sum of $43.75 "on its due date without default and without repayment shall be payment in full of the principal and interest evidenced thereby."

■ Another consideration with which the parties were faced in making the contract was that it should be so conditioned as not to offend against the public policy of the state relating to interest contracts. Both borrower and lender were charged with knowledge of the constitutional and statutory declarations that the public policy of the state with respect to the maximum compenstaion that is allowed to be fixed by the parties to a written contract for the use or detention of money, is 10 per cent per annum; and that a rate fixed in excess thereof is usurious and void and of no effect for the amount and value of the interest. Tex. Const., Art. 16, Sec. 11; R. S., Arts. 5067 and 5071.

The stipulations of the notes and deed of trust will next be examined in connection with a part of the undisputed evidence. The rate of interest per annum at which the amount of the loan as evidenced by the $3500 note draws interest so as to "be payment in full of the principal and interest" by the borrower's

meeting each installment "on its due date without default and without prepayment," is nine and nine hundred twelve thousandths (.099912) per cent. In other words that is the rate per annum at which the loan bears interest when payment of the 120 installments is spread over the entire 10 year period of the loan.

■ The problem of ascertaining what rate per annum is necessary to so pay off the loan is one purely of mathematics. Mr. Tribbey, a certified public accountant, presented in his evidence his calculations on this rate based on the present value of 1 due 120 months hence, which show that the amount of monthly payment necessary to pay off the loan under consideration, is $46.09. The figures and statement showing the method used by the certified public accountant in calculating the amount of the monthly payment on the given rate as contained in the statement of facts is:

"$3,500 advanced March 6, 1928—First payment April 15, 1928. Present Value of 1 due 120 months hence at .09912—(1.00826) 120
Log 1.00826—00357
.00357 time 120—42840
Anti Log 42840—2.682
1 divided by 2.682—.37285 Present value of 1
1 minus .37285—62715 compound discount
.62715 divided by .00826—75.93 Present value of annuity of 1
$3,500 divided by 75.93—46.09 Amount of monthly payment."

It thus appears that the rate fixed by the parties was slightly lower than the maximum allowed by law, and that the plan of the loan contract as far as discussed is not tainted with usury. This is apparently recognized by the Court of Civil Appeals in stating: "Had the contract contained no provision for shortening the term, it may be conceded; at least for the purposes of the present discussion, that it would have been free from the taint of usury."

What has been said disposes of that phase of the question presented relating to the use of the money loaned under the plan involved without prepayment or default. This leaves for disposition that phase of the question relating to detention of money upon default and acceleration and the shortening of the loan period thereby. The question as thus reduced is identical with that presented in Shropshire v. Farm Credit Co., supra, which is stated by Associate Justice Greenwood, speaking for the court, reads: "The single question for our determination is

whether a contract is usurious under the Constitution and statutes of Texas, which provides for the payment of a higher rate of interest than ten per cent per annum, at the creditor's option, on no other condition than the default of the debtor in discharging annual (here monthly) installments of interest."

It is obvious from the stipulations in the contract that upon the exercise by a holder of the $3500 note of his option to accelerate maturity in such manner as to shorten the loan period, the effect is to empower such holder to collect interest at a rate in excess of that permitted to be fixed by the usury statute, unless the contract is safeguarded by other stipulations which save it from offending against the statute. This necessitates an examination of the stipulations applicable in event of the exercise of such option.

The parties stipulated in the $3500 note that upon acceleration of maturity the balance due of principal and interest should be arrived at by accrediting each payment theretofore made thereon as of the date received by the holder "on the sum of the *then balance* and *accrued interest* thereon" (Italics ours) ; and incorporated in the securing clause of the deed of trust a stipulation that the notes were "with interest * * * *payable as it accrues.*" (Italics ours.) They incorporated in the sale clause of the deed of trust a clear stipulation directing the manner of distributing the proceeds of the sale of the land when sold under the trust power, and stipulated further in that part of the same clause relating to application of proceeds upon sale, that such application should be "to the payment rateably of said notes then unpaid *principal* and *accrued interest.*" (Italics ours.)

Immediately following this stipulation is a statement made by way of parenthesis, which is here set out in the sale clause to show the connection in which the statement appears. The clause deleted as to immaterial words and phrases and including the parenthetical statement, reads:

"But in case of default or failure to make prompt payment of said indebtedness, or any part thereof, principal or interest, *as the same shall become due and payable,* * * * then and in that event the said trustee is hereby authorized and empowered, * * * at the request of the payee or any holder of any of the above described notes to sell the above described property to the highest bidder for cash, * * * and after such sale, to make the purchaser or purchasers hereunder good and sufficient deeds * * * conveying the property so sold to the purchasers, * * * and to receive the proceeds of said sale and apply the same as follows: * * * *Second,* to the payment *rateably* of said notes

*then unpaid principal* and *accrued interest* (It being understood that when default shall be made in the payment of *any* of the said *notes,* or any installment of interest on said notes or a failure to pay any State, County or City Taxes assessed upon said property, after the same by law becomes delinquent, all others shall become at once due and payable at the option of the holder or holders thereof). Third, the remainder, if any there shall be after the payment of all of said costs and expenses, the principal and interest of said notes, shall be paid to F. M. Robertson."

As an all "inclusive safeguard to save the contract from offending against the statute, it was stipulated in the $3500 note that upon acceleration of maturity by the holder under his option it was *agreed* the *interest on said loan* shall be *"ten per cent per annum."*

It is clear from terms of the contract in the case at bar as above set out, that where interest is to be paid as a result of acceleration, it is *accrued interest.* The $280 interest note, when executed, had no such installments, and carried in its terms no option to declare any of its installments due.

In Shive v. Braniff Investment Co., supra, the same contract was involved as here, but under a different state of facts. Judge Martin speaking for the court on the question of its legality says:

"The clause (the parenthetical clause) is apparently, but we think not necessarily, in conflict with the two already discussed (the clauses relating to the rate's becoming 10 per cent, and the 'payment rateably' clauses.) Imputing to the parties as intention to make a legal contract, construing the instruments together as one, and giving effect to specific, as against somewhat general and vague, we have no difficulty in reaching the conclusion that the contract in question is untainted by usury. Simply stated, we construe it as a whole to provide for the payment of interest at slightly under 10 per cent per annum, if the contract runs to maturity, and exactly 10 per cent if it is matured earlier than its due date. The inference that unearned or unaccrued interest was to be paid upon the contingency of default is not a fair one. Instead, the words 'accrued interest' are used, and 10 per cent not upon any specific note or amount, but upon the 'loan' is specifically provided for in case of an accelerated maturity. Whether we call the smaller note principal or interest or in part both seems immaterial since its payment upon acceleration would be governed by the specific provisions for the payment of only 10 per cent interest

on the 'loan.' That this might result in the cancellation of all or a part of its unpaid installments in order to make effective the stipulations for 10 per cent on the 'loan' does not seem to us to be of controlling effect."

Undisputed facts in the record of the case at bar obviate any feeling of doubt as to the correctness of the result of so construing the contract here.

The certified public accountant above referred to testified that he had computed the rate of interest on the loan contract to run over the period of 120 months as stipulated in the notes. He used as the basis of his computations the rate of nine and nine hundred and twelve thousandths (.09912) per cent per annum. This rate was used, as it is the rate at which compensation is paid the lender under a loan plan whereby a barrower repays over a period of 120 months at $46.09 per month a loan of $3500.00 together with interest when the monthly installments are paid without prepayment or default as provided in the contract. The tabulations containing the computation cover several pages of the statement of facts which need not be copied herein in full. Set out below are the figures showing the tabulations of the amounts of payment each month, amounts of interest accruing each month, the amounts of interest and principal deducted each month, and the balances of principal remaining each month after such deductions, all respectively, computed and applied the first three months, and the last three months successively, of the loan period, in accordance with the stipulations of the contract as herein construed:

| Payment Number | Total Payment | Interest | Principal | Balance of Principal |
|---|---|---|---|---|
| | | | | $3,500.00 |
| 1 | 46.09 | 28.91 | 17.18 | 3,482.82 |
| 2 | 46.09 | 28.77 | 17.32 | 3,465.50 |
| 3 | 46.09 | 28.63 | 17.46 | 3,448.09 |
| * * | * * | * | | |
| 118 | 46.09 | 1.11 | 44.98 | 89.54 |
| 119 | 46.09 | .74 | 45.35 | 44.19 |
| 120 | 46.09 | 1.90 | 44.19 | |
| | 5,530.80 | 2,030.80 | 3,500.00" | |

It appears from the total results of the foregoing tabulations that the sum of $1.90 was added to the interest column to produce an exact balance. The witness thus explains the negligible discrepancy.

"On my machine, in carrying the decimal places out per month, I took * * * .0826 is the rate I used per month. Now, in reality it should be .08261002, but on my machines I couldn't use that, so I would be bound to be * * * unless I carried it out in an infinite number of decimal places * * * to be fifty cents or a dollar over, or fifty cents or a dollar under, when I got through, and there was an over payment of approximately $1.90 at the end. Now, had I used .08261 it would have been slightly different the other way. In other words, about four decimal places is as far as we carry it out. If I had used .0827 it would have been the other way. .0827 times 12 would be .9924 but inasmuch as .9924 is less than 10 it is immaterial whether I am a few cents over or a few cents under."

The ledger sheet kept by Provident Mortgage Co. is in evidence along with the agreement of the parties that the payments as made were in the sum of $46.09 each. The record of dates of payment, payments made, and balances, respectively, covering a period of the first three successive months, follows:

| "No. 1928 | Date Paid | Payment | Balance |
|-----------|-----------|---------|---------|
| 1 | 4-12-28 | 17.18 | 3,482.82 |
| 2 | 5-21-28 | 17.32 | 3,465.50 |
| 3 | 7- 5-28 | 17.46 | 3,448.04" |

It is here pointed out that the interest on $3500 for a period of three months at the rate of 10 per cent per annum is $87.48, which is a larger sum than actually accrued in the same time, as appears from the tabulations above. It is also pointed out that while the interest accruing for 12 months on $3500 is $350, the total interest actually accrued as appears from the tabulations in the statement of facts in the same period of time is the smaller sum of $337.30. It conclusively appears therefore that there is no usury in the contract unless it results from the stipulations relating to the acceleration of maturity.

Defendant in error relying on the "distribution of the proceeds" clause of the deed of trust and the option referred to in the parenthetical statement thereof, states in his supplemental brief that "rateably merely means proportionately and it is significant that immediately after the word payment comes the word notes," and that it was difficult for him to conceive that this language would be interpreted that no payment would be received on one of the notes at all.

The language is not so interpreted. The note would be paid in full in the absence of acceleration of maturity, and in full

if maturity be not accelerated prior to the payment of the tenth installment. If paid prior to that time it would be paid proportionately with the $3500 note, the payments on same being applied "to the payment *rateably* of said notes *then unpaid principal* and *accrued interest*" (italics ours), which basis of proration is always available as above pointed out.

It appears from the tabulations in the statement of facts that under the plan of the loan if default is declared and maturity accelerated by the holder of either or both notes, after the expiration of 10 months, no cancellation results. The tabulations show that interest will have then accrued in sufficient amount to retire the $280 note. Upon acceleration at an earlier date a part of the $280 note is thereby cancelled, or rather its payment never becomes obligatory. In other words this note is a conditional and not unconditional obligation. The unpaid accrued interest carried in the $280 note at the end of the three months' period is the difference between $280.80 and $86.31, to-wit, $194.49. The balance of principal remaining unpaid at the end of the same period is $3448.09. To prorate the proceeds of sale rateably between the respective balances, as required under the terms of the contract, of $3448.09 and $194.49, is a mere mathematical detail. It will be noted from the tabulations made by the witness Tribbey that the balance due of principal and interest is arrived at by accrediting each payment made as of the date stipulated and that each payment is credited on the sum of the *then balance* and *accrued interest thereon.* The "then balance" and "accrued interest" are always available from the tabulations as the contract stipulates for monthly installments in the sum agreed upon, $46.09. Such accrediting is in accordance with the provision of the $3500 note. The tabulation does not show the method of applying the proceeds in event of *sale,* but if the holder of either note by virtue of the trust power causes sale of the land, the proceeds are to be applied "to the payment *rateably* of said notes *then unpaid principal* and *accrued interest."* (Italics ours.) The purpose of the "distribution of proceeds" provision of the sale clause is to direct the manner of distribution, and is incorporated in the deed of trust following, and in the light of, the contingencies agreed upon by the parties as conditions to the *sale* of the land.

■ Defendant in error states also that it was intended in the making that the notes should be transferred and sees a danger of double payment to the borrower or holder of the $280 note in the event of transfer. The borrower is protected in such event and is not in danger of having to pay the note twice. No

question of innocent purchaser can arise in such case, since one of the notes carries express notice on its face that it is part of a loan transaction, each note referring to the other, and the deed of trust to both; and the contract consisting of all, speaks to the borrower or any holder of the notes, as through one instrument, the meaning of all their stipulations. Judge Stayton as far back as McKelvain v. Allen, 58 Texas, 383, speaking for the court says: "Under the repeated decisions of this court the instruments, taken together, evidence but an executory contract." Chief Justice Tarlton in Dodge v. Signor (writ of error denied), 18 Texas Civ. App., 45, 44 S. W., 926, states with reference to the transaction there involved that "the notes and deed constituted, in effect, but a single instrument." Judge Williams in San Antonio Real Estate Building & Loan Association v. Stewart, 94 Texas, 441, 61 S. W., 387, in answering a certified question as to whether the statute of limitations had barred certain notes of a series, says: "The notes and the instrument creating the loan, executed at the same time concerning the same subject matter, are to be construed together as constituting one contract." The rule as stated in Texas Jurisprudence, Vol. 10, p. 286, sec. 166, reads in part, "Instruments executed at the same time or contemporaneously, for the same purpose, and in the course of the same transaction, are to be considered as one instrument, and are to be read and construed together." The recent usury case, Shive v. Braniff Investment Company, supra, is cited among others in support of the rule. The same stipulations which protect the borrower in the matter of offending against the usury statute, protect him in the matter of double payment.

It it be assumed, however, that the stipulations of the deed of trust and $3500 note as to the effect of the exercise of the holder's option, are in conflict, then preference must be given to the stipulation contained in the note.

The writings involved in the case at bar are within the purview of Dugan v. Lewis, 79 Texas, 249, 14 S. W., 1024, 12 L. R. A., 93, 23 Am. St. Rep., 332, rather than Shropshire v. Farm Credit Co., supra. The acceleration of maturity clause contained in the note involved in the Dugan case matured the *principal* of the note upon default at the option of the holder, while the deed of trust clause touching the same matter apparently matured both of the notes. These clauses, respectively, are distinguished by Associate Justice Greenwood, in the Shropshire case. Speaking for the court, referring to the writings involved in the Dugan case, he says:

"While the deed of trust contained a clause that the whole sum of money secured by the lien of the deed of trust might be declared at once due, at the option of the lender, yet the note which the deed of trust secured, specifically provided that the debtor's failure to pay the note or any installment of interest was to result in making the *principal* of the note become due at the option of the holder."

Justice Greenwood further says the court completely disposed of the case when it held:

"We do not think a correct construction of the contract will make a greater amount of interest due and collectible upon it than shall have accrued on the principal calculated up to the date of collection at the rate named in the note; or in other words, that any *unaccrued interest* comes within the proper meaning of the stipulations." (Italics ours.)

The holding in the Dugan case is approved by the Shropshire case in the following language, which applies with equal force here:

"There is no possibility of usury in the contract involved in Dugan v. Lewis. While the deed of trust contained a clause that the whole sum of money secured by the lien of the deed of trust might be declared at once due, at the option of the lender, yet the note, which the deed of trust secured, specifically provided that the debtor's failure to pay the note or any installment of interest was to result in 'making the *principal* of the note due at the option of the holder.'"

In the phrase, "possibility of usury" made use of in Shropshire v. Farm Credit Co., supra, "possibility" means *possible* under contingencies arising upon the stipulations of the loan contract,—all of the stipulations read together, and not upon some isolated stipulation. In other words, it means possible under the terms of the loan contract, fairly construed. This meaning is evident from the connection in which the phrase is used. The statement immediately following begins an analysis of the stipulations of the notes and deeds of trust then involved.

The Court of Civil Appeals held the loan contract usurious under the view that it purports to obligate the borrower to pay, in a three months' period, $280.00 more than the maximum rate of interest on the amount of the loan; and assumes from this that a contingency could arise from the terms of the contract whereby the lender could exact from the borrower more than 10 per cent per annum for the use and detention of the money loaned. It is apparent from what has been said that the contingency does not comport with the plan of the loan, in that it

treats the $280 note as an unconditional rather than a conditional obligation of the borrower, and as a continuing obligation for the full amount.

Two witnesses for plaintiff, Auditor Ragan and the plaintiff himself, testifying as experts in figuring interest, stated that in their opinions respectively the rate of interest on the loan is in excess of 10 per cent per annum; but in their computations treated the $280 note as earned interest and unconditionally payable. The result of the computations under the plan used, as stated by the Auditor himself, was that the contract "should have been paid in 108 instead of 120 installments." Obviously the contingency sought to be shown by these witnesses was not in accordance with the terms of the contract.

The holding in the Dugan case on the question here discussed is emphatically approved in the Shropshire case. On motion for rehearing the correctness of the judgment of the court "was vigorously assailed." On rehearing Justice Greenwood, speaking for the court with characteristic vigor and clarity, overruled the motion. The reasons for refusing to sustain the motion were prefaced by the statement that the court recognized "its duty in determining the validity of the contract" there involved "to apply the *universally* accepted rule" that a court must give to the terms of the contract, if fairly susceptible of it, a construction that will make it legal. The contract here involved is not only susceptible of the construction herein given, but is not reasonably susceptible of any other when effect is given to all of its terms and provisions. Dugan v. Lewis, supra; Shropshire Farm Credit Co., supra; Shive v. Braniff Investment Co., supra.

If effect be given the stipulation in the $3500 note providing 10 per cent interest on the loan upon exercise of the option to accelerate, its language can have no other meaning, when read with the "proration rateably" and "distribution of proceeds" provisions of the sale clause of the deed of trust, together with the parenthetical statement referred to, then that the unearned portion of the $280 interest note is rendered nonobligatory upon exercise of the option prior to the payment of the tenth installment. The $280 note being an interest note, represents either earned or unearned interest. Viewed as representing earned interest the contract is usurious and unlawful. Both borrower and lender knew at the time the contract was made that no interest had then been earned. Neither, in law, by the stipulations of their loan contract, fairly construed,

intended to offend, and did not offend, against the usury statute. Our conclusion is that the contract is free from usury.

The provision of the deed of trust relating to the payment of taxes need not be discussed other than to say it stipulates that the parties agreed that any amount paid for taxes should be treated as expenses and costs of executing the trust. They are directed to be so treated after crediting the forty-one installments of interest paid.

Judgments of the trial court and Court of Civil Appeals are reversed and the case is remanded to the trial court for entry of judgment in favor of plaintiffs in error in accordance with this opinion.

Opinion adopted by the Supreme Court March 27, 1935.