# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-12-00799-CV

---

**Robert Cronin, Appellant**

**v.**

**Wells Fargo Bank, N.A. a/k/a Wells Fargo Home Mortgage, Appellee**

---

**FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
NO. 249,495-B, HONORABLE RICK MORRIS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Robert Cronin sued Wells Fargo Bank, N.A. a/k/a Wells Fargo Home Mortgage, seeking to have the nonjudicial foreclosure on his property rescinded. Cronin appeals from the trial court's summary judgment in favor of Wells Fargo. Cronin asserts in a single issue that the deed of trust did not authorize Wells Fargo to seek foreclosure because it is not the "Lender" as defined in the deed. The original designated Lender, Cornerstone Mortgage Company, assigned its interests in the note and deed of trust to Wells Fargo. We conclude that Wells Fargo has contractual standing to foreclose on the note's collateral based on this assignment of the note and deed of trust and on language in the deed providing that "the covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender." We therefore affirm.

## BACKGROUND

Cronin bought a house in February 2004. To finance the purchase, he signed a thirty-year, fixed-rate note with principal and interest payable to Cornerstone Mortgage Corporation. As part of the loan transaction, Cronin also signed a deed of trust, dated the same day, which created a lien on the property to secure payment of the note. A month later, Cornerstone assigned its interests in the note and deed of trust to Wells Fargo and recorded the assignment in Bell County, where the property is located.

Cronin defaulted on the loan in 2010. After Cronin failed to cure his default, Wells Fargo accelerated the maturity date of the note and demanded immediate payment of all sums secured by the deed of trust. Cronin did not pay the outstanding debt, and Wells Fargo foreclosed on the property on March 1, 2011.

Cronin sued Wells Fargo and other defendants in April 2011. Cronin asserted claims for breach of contract, breach of fiduciary duty, wrongful foreclosure, violation of the Texas Deceptive Trade Practices Act (DTPA), and violation of the Texas Debt Collection Practices Act (DCPA). Wells Fargo moved for traditional and no-evidence summary judgment on the claims raised in Cronin's petition. In his response, Cronin stated that he had not alleged claims for breach of fiduciary duty or wrongful foreclosure, admitted that documents attached to Wells Fargo's summary-judgment motion negated his DTPA claim, and stated that his DCPA claim was not ripe for consideration. Cronin only responded to arguments related to his breach-of-contract claim. He did not produce any evidence in response to Wells Fargo's no-evidence grounds for summary judgment.

2

Cronin filed an amended petition the day before the summary-judgment hearing. Alleging the same facts as his original petition, Cronin revived his DTPA, DCPA, and wrongful-foreclosure claims that he had relinquished in his response to Wells Fargo's summary-judgment motion. He maintained his breach-of-contract claim, adding the allegation that Wells Fargo was not the "Lender" as defined in the deed and thus was not entitled to exercise remedies granted exclusively to the Lender, including appointing a substitute trustee and exercising the power of nonjudicial foreclosure. He also added a new claim for violation of Chapter 12 of the Civil Practice and Remedies Code ("Chapter 12 claim"), asserting that Wells Fargo fraudulently claimed an interest in Cronin's property and was liable for using documents to make its fraudulent claim.

After a hearing, the trial court granted summary judgment on all of Cronin's claims against Wells Fargo and severed the claims from the lawsuit. Cronin moved for reconsideration but only on his breach-of-contract claim based on Wells Fargo's alleged lack of contractual standing to foreclose and his Chapter 12 claim based on Wells Fargo's alleged improper filing of documents not authorized for a party not capable of foreclosure and appointment of a substitute trustee. Wells Fargo responded, and after a hearing, the trial court denied Cronin's motion. This appeal followed.

**ANALYSIS**

On appeal, Cronin challenges the trial court's grant of summary judgment on his breach-of-contract, Chapter 12, DTPA, and DCPA claims but acknowledges that all these claims turn on the central issue of whether Wells Fargo had the power to appoint a substitute trustee

3

and foreclose.[1]  Accordingly, we must construe the relevant language in the deed and the note to determine whether Wells Fargo had authority to nonjudicially foreclose the lien on Cronin's property.

**Standard of review**

We review the trial court's summary judgment de novo.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  When, as here, a party moves for summary judgment on both traditional and no-evidence grounds, we first review the trial court's decision under the no-evidence standard.  Tex. R. Civ. P. 166a(i); *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) (explaining that if nonmovant fails to produce legally sufficient evidence to meet his burden for no-evidence motion, there is no need to analyze whether movant satisfied its burden under traditional motion).

"Under Rule 166a(i), a movant must establish that '[a]fter adequate time for discovery . . . there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial.'"  *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004) (quoting Tex. R. Civ. P. 166a(i)).  When a movant files a proper no-evidence summary-judgment motion, the burden shifts to the nonmovant to present or identify summary-judgment evidence raising a genuine issue of material fact.  Tex. R. Civ. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *see also* cmt. to Tex. R. Civ. P. 166a(i) (explaining that nonmovant must "point out evidence that raises a fact issue"); *Ramirez v. Colonial Freight Warehouse Co.*, — S.W.3d —, No. 01-13-00617-CV, 2014 WL 1603548, at *5

---

[1]  Cronin concedes that he could not establish a grossly inadequate sale price, and thus, his wrongful-foreclosure claim was properly dismissed.

4

(Tex. App.—Houston [1st Dist.] Apr. 22, 2014, no pet. h.) (noting that nonmovant is not required to duplicate evidence already found in court's file but must incorporate relied-upon evidence in his response by reference). Here, although Cronin did not produce any summary-judgment evidence in response to Wells Fargo's motion, he did reference evidence attached to Wells Fargo's motion—specifically, the deed of trust and the note—in support of his contention that Wells Fargo lacked contractual standing to nonjudicially foreclose on the property.

**Construing the deed's language**

The parties dispute whether the deed of trust authorizes Wells Fargo, the original lender's assignee, to appoint a substitute trustee and conduct a nonjudicial foreclosure. Cronin contends that the express language of the deed allows only the original lender to exercise those rights. Wells Fargo counters that the deed's language unambiguously contemplates the original lender's ability to assign its rights under the contract. An ambiguous contract creates a fact issue on the parties' intent; consequently, we must determine whether the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). We will construe an unambiguous contract as a matter of law. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011).

In this case, we must construe the deed of trust and the note together because they were executed by the same parties on the same day, they pertain to the same real property, each document references the other, and the deed of trust is identified as the security for the note. *Mathis v. DCR Mortg. III Sub I, L.L.C.*, 389 S.W.3d 494, 507 (Tex. App.—El Paso 2012, no pet.); *see also*

5

*Braniff Inv. Co. v. Robertson*, 81 S.W.2d 45, 50 (Tex. 1935); *Robinson v. Saxon Mortg. Servs., Inc.*, 240 S.W.3d 311, 314 (Tex. App.—Austin 2007, no pet.). When construing a contract, we must ascertain the true intentions of the parties as expressed in the writing itself. *Italian Cowboy Partners*, 341 S.W.3d at 333. As part of this process, "we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* (quoting *J.M. Davidson*, 128 S.W.3d at 229). No single provision taken alone should control—instead, we must consider all provisions with reference to the entire agreement. *J.M. Davidson*, 128 S.W.3d at 229. Our analysis begins with the contract's express language. *Italian Cowboy Partners*, 341 S.W.3d at 333.

Cronin contends that because the deed only defines "Lender" as Cornerstone, the original lender, and does not include the words "successors and assigns" like the definition of "Lender" in the note, Wells Fargo cannot be considered the Lender under the deed's terms and thus does not have the powers granted to the Lender by the deed. Wells Fargo argues that it had the authority to foreclose because Cornerstone assigned its interests in the deed of trust and the note to Wells Fargo, and the deed authorizes the Lender to appoint a successor trustee and foreclose; thus, Wells Fargo did not breach the contract by foreclosing. When interpreting the deed's provisions, although we look first to the deed's definition of "Lender," as Cronin suggests, we must also examine the definition in the context of the agreement as a whole. *See Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010) ("We give contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning."). As a result, we must consider the deed's definition of "Lender" in the context of deed paragraph 12 and the note.

6

Paragraph 12 provides that "the covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender." We conclude that paragraph 12 unambiguously expresses the parties' intent to allow the original lender to assign the deed and for the lender's assignee to acquire all of the original lender's rights and powers derived from the deed. These rights include the ability to appoint a substitute trustee, to invoke the power of sale, and to obtain all other benefits owed to the original lender under the contract. If we allow the deed's definition of "Lender" alone to control, paragraph 12 would be rendered meaningless. Moreover, the note defines "Lender" as Cornerstone and its successors and assigns. Construing the term "Lender" to mean two different things in documents that are part of the same loan transaction would lead to absurd results. *See Avasthi & Assocs., Inc. v. Banik*, 343 S.W.3d 260, 264 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing *Lane v. Travelers Indem. Co.*, 391 S.W.2d 399, 402 (Tex. 1965), for proposition that court should refuse to construe contract in manner that would produce absurd result).

Although documents are generally construed against the party that prepared them, we also must construe contracts to reach a reasonable result consistent with the apparent intent of the parties. *Robinson*, 240 S.W.3d at 314. Cronin does not dispute that he borrowed the money to purchase the property and that he executed the loan-transaction documents to properly secure the loan with the deed of trust using the property as collateral. He does not dispute that Cornerstone assigned its interest to Wells Fargo or the validity of the assignment. He does not dispute that he defaulted on the loan. Instead, he seeks to preclude Wells Fargo from foreclosing on the unpaid loan based on what he describes as a "weakness in drafting that does not allow subsequent

7

'successors and assigns' of the Deed of Trust to non-judicially foreclose." Cronin cannot rely on this technical defect in a single loan document to avoid his contractual obligations after receiving the proceeds of the loan and securing the debt with a valid lien. *See id.* Accordingly, we construe the deed as authorizing Cornerstone to assign its interests and authorizing Wells Fargo, as Cornerstone's assignee, to foreclose.

We hold that Wells Fargo established as a matter of law that the loan documents are unambiguous and that it acquired by assignment the same authority as the original lender, as well as all of the original lender's rights under the deed of trust, including the rights to appoint a successor trustee and foreclose. As a result, we overrule Cronin's sole issue on appeal and hold that the trial court properly granted summary judgment on Cronin's breach-of-contract claim.[2]

### CONCLUSION

We affirm the trial court's grant of summary judgment in Wells Fargo's favor.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   June 19, 2014

_____

[2] In addition, we hold that the trial court properly granted summary judgment on Cronin's other claims, which Cronin acknowledges are all based on Wells Fargo's purported lack of authority to pursue its rights under the deed of trust.

8