Michael R. MULVEY, Appellant,

v.

MOBIL PRODUCING TEXAS AND NEW MEXICO INC., Atlantic Richfield Company, Vastar Resources Inc., Appellees.

Michael R. Mulvey, Appellant,

v.

Pecos Development Corporation, et al., Appellees.

Nos. 13–02–650–CV, 13–03–056–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 27, 2004.

Rehearing Overruled Sept. 24, 2004.

Thomas John Fisher, Corpus Christi, for Appellant.

Taylor Pope and Susan R. Richardson, Cotton, Bledsoe, Tighe & Dawson, Midland, Gary E. Ellison, Houston, for Appellee in No. 13-02-00650-CV.

Jo Beth Eubanks, Daniel McNeel Lane, Jr., and Saul H. Perloff, Akin, Gump, Strauss, Hauer & Field, Calhoun Bobbitt, San Antonio, Thomas D. Bracey, for Appellee in No. 13-03-00056-CV.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and GARZA.

## OPINION

Opinion by Justice GARZA.

This case arises out of oil and gas exploration and development operations in Live Oak County, Texas. Appellant, Michael R. Mulvey, brought various causes of action related to the production of oil and gas from two oil wells against a large group of defendants. The trial court granted a plea to the jurisdiction, special exceptions, and

two motions for summary judgment in favor of certain defendants and against Mulvey. Mulvey appealed actions 7346–C–1 and 7346–C–2 separately to this Court.[1] In this opinion, we affirm the trial court's judgment in both actions.

### Background

Mulvey purchased various mineral fee interests and oil and gas leases in Block 71 of the Simmons Subdivision of Live Oak County. In 1951, prior to his purchases, the parties holding the leases and mineral fee interests in Block 71 had entered into a Joint Operating Agreement ("the 1951 JOA"). The 1951 JOA gave all leaseholders in the block a preferential right to purchase any time one of the leases were to be sold to another party. The party from whom Mulvey purchased his lease did not follow this provision of the 1951 JOA before selling to Mulvey, in that he failed to notify the other leaseholders that the sale was occurring and failed to provide these leaseholders an opportunity to exercise their preferential right before Mulvey assumed title.

When Mulvey purchased his lease, existing leaseholders of Block 71 oil and gas leases included appellees Mobil and Arco, among others. Subsequently, Mobil and Arco both entered into "farmout" agreements with Pecos Development Corporation ("Pecos").[2] In accordance with the farmout agreements with Mobil and Arco, Pecos drilled and completed two gas wells in Block 71: the 71–1 well and the 71–2 well. Upon completion of the wells, Arco and Mobil each assigned their interests to Pecos, reserving a royalty interest for themselves. Arco later assigned to Vastar the interests it had reserved under its farmout and assignment to Pecos and all remaining interests. Neither Arco nor Mobil complied with the 1951 JOA's preferential right to purchase provision by giving Mulvey notice and opportunity to purchase prior to entering into the Pecos farmout agreements. Following the farmout to Pecos by Mobil and Arco, Mulvey and Pecos entered into an agreement as part of Pecos's effort to obtain a Rule 37 Exception to the spacing rules of the Texas Railroad Commission in order for it to be able to complete the 71–1 well. *See* 16 TEX. ADMIN. CODE § 3.37 (2003) (Tex.R.R. Comm'n, Statewide Spacing Rule). By this agreement, Pecos assigned Mulvey an interest in production from the 71–1 well

---

1. On its own initiative, the trial court then severed all claims asserted against appellees Mobil Producing Texas & New Mexico, Inc., Atlantic Richfield Company ("Arco"), and Vastar Resources, Inc., from the underlying cause of action and made these claims the subject of a separate action styled *Mulvey v. Mobil Producing Texas & New Mexico et al.* and having docket number 7346–C–1. About a month later, the trial court also severed all claims asserted against appellees Pecos Development Corporation, Bay Rock Operating Company, and the Pecos Investors: Espero Energy Corporation; Delaware Permian Oil and Gas Company; Diverse GP, II, a Texas limited partnership; Charles Katz; J.M. Carnes, William D. Balthrope; Spring Creek Resources Corporation, a successor to Cenote Oil Company; Marie Colson as Independent Executrix of the Estate of William E. Colson;

McCord Exploration Company; Arthur Seeligson, Jr.; Arthur Seeligson, III; Jack T. Williams; Jack T. Williams, II; and 4 JW, Ltd. These claims were made the subject of a separate action styled *Mulvey v. Pecos Development Corp. et al.*, and numbered 7346–C–2.

2. A farmout is defined as: a common form of agreement under Texas oil and gas law, in which the owner of a lease agrees to assign the lease, or some portion of it, to another party who is interested in drilling the tract. The farmout usually obliges the assignee or "operator" to drill one or more wells on the assigned acreage as a prerequisite to the completion of the transfer. *Mengden v. Peninsula Prod. Co.*, 544 S.W.2d 643, 645 n. 1 (Tex. 1976) (quoting WILLIAMS & MEYERS, OIL AND GAS LAW, MANUAL OF TERMS 167 (1971)).

and Mulvey released and relinquished his oil, gas and mineral lease in that tract where the well was developed.

Later, Mulvey successfully brought an action for forced pooling of the 71–2 well before the Texas Railroad Commission under the Mineral Interest Pooling Act ("MIPA"). The Commission appointed Bay Rock Operating Company ("Bay Rock"), successor to Pecos, as Operator of the well, and concluded that each working interest owner, including Mulvey, should be allocated a percentage of the production from the well. Mulvey, however, had to pay back to Bay Rock his pro rata share of its costs for drilling and operating the well, plus a penalty of one hundred percent of that amount.

Mulvey now claims not to have been paid his proper royalties from either of the two wells on Block 71. He filed several related complaints with the Texas Railroad Commission against Pecos and Bay Rock, seeking these royalty payments. The non-operator appellees (i.e., Mobil, Arco, Vastar and the Pecos Investors) were not parties to those proceedings. The Commission ultimately dismissed Mulvey's complaints and then denied his motion for a rehearing.

Shortly thereafter, Mulvey brought cause number 7178–C in the District Court of Live Oak County against Pecos and Bay Rock. The parties entered into binding arbitration proceedings and pursuant to these proceedings, the court awarded Mulvey his interests from the 71–1 well but not the 71–2 well. Mobil, Arco, Vastar and the Pecos Investors were not parties to this arbitration proceeding nor to the Texas Railroad Commission adjudication.

Mulvey then added a variety of other defendants, including appellees Mobil, Arco and Vastar, as well as the Pecos Investors, to his district court claims against Pecos and Bay Rock, due to their alleged vicarious and direct liability for the violations of his right to be paid from the two wells. These appellees filed a plea to the jurisdiction, which was granted by an order of the trial court. Mulvey amended his pleading to conform to this order. Appellees then filed special exceptions, contending that the amended pleading continued to refer to issues that the trial court ruled on in its granting of the plea to the jurisdiction. Appellees also filed motions for summary judgment for the claims based on the non-operators' direct liability and on claims related to the 1951 JOA. The special exceptions and two motions for summary judgment were granted. On its own initiative, the trial court then severed the claims against the Pecos Investors and the claims against Mobil, Arco and Vastar and assigned separate cause numbers to each new case.

By four issues, Mulvey now appeals the trial court's order on the plea to the jurisdiction, special exceptions, and the two motions for summary judgment.[3] In the appeal of *Mulvey v. Pecos Development Corp. et al.*, he also appeals the granting of the order of severance.

**3.** Unless otherwise statutorily authorized, an appeal may be made only from a final judgment. Tex. Civ. Prac. & Rem.Code Ann. §§ 51.012, 51.014 (Vernon Supp.2004). A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record, except as necessary to carry out the decree. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992);

*Villarreal v. Zukowsky*, 54 S.W.3d 926, 929–30 (Tex.App.-Corpus Christi 2001, no pet.). While no "final" judgment has been rendered in this case, the combined effect of the plea to the jurisdiction, special exceptions, motions for summary judgment and order of severance was to dispose of every claim pending against appellees, making the various orders properly appealed to this Court.

### Plea to the Jurisdiction

By his first issue, Mulvey claims that the trial court erred in granting appellees' plea to the jurisdiction. More specifically, Mulvey disputes the striking of specific articles from his petition as a result of the granting of appellees' plea to the jurisdiction. We conclude the articles in question involve matters within the primary jurisdiction of the Texas Railroad Commission and were properly struck by the trial court.

A plea to the jurisdiction challenges the trial court's authority to consider the subject matter of a specific cause of action. *Rodriguez v. EMC Mortgage Corp.*, 94 S.W.3d 795, 797 (Tex.App.-San Antonio 2002, no pet.). The limits of the trial court's subject matter jurisdiction is a question of law and subject to de novo review by the appellate court. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex.2002). In order to prevail, the party asserting the plea to the jurisdiction must show that even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable defect apparent from the face of the pleadings rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex.App.-Austin 2000, no pet.); *City of Hidalgo Ambulance Serv. v. Lira*, 17 S.W.3d 300, 304 (Tex.App.-Corpus Christi 2000, no pet.). Thus, the court must construe the plaintiff's pleadings liberally in favor of jurisdiction. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). Similarly, when an appellate court considers a trial court's order on a plea to the jurisdiction, it must construe the pleadings in the plaintiff's favor and look to the pleader's intent. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). In addition to the pleadings, the court may also consider other relevant evidence and must do so when necessary to resolve the jurisdictional issues raised. *Bland Ind. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000).

When a plaintiff fails to plead facts that establish jurisdiction but the petition does not effectively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded an opportunity to amend. *Brown*, 80 S.W.3d at 555; *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 805 (Tex. 1989). However, if the pleadings affirmatively negate the existence of jurisdiction, a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Brown*, 80 S.W.3d at 555.

The trial court's order granting appellees' plea to the jurisdiction included the following finding:

> The Court finds that Michael R. Mulvey filed a Complaint with the Railroad Commission of Texas ("the Commission"), Oil and Gas Docket No. 02–0205300, against Pecos Development Corporation and Bay Rock Operating Company, for alleged violations of Commission Rules 27, 31, 37, 38, 40 and for violation of various provisions of the Natural Resources Code. The Court further finds that a hearing on Mulvey's Complaint was held on July 15, 1994, and that the Commission heard arguments and testimony, and received into evidence testimony in written form with accompanying documentary evidence. The Court further finds that, on March 14, 1995, the Commission issued a Final Order dismissing the Complaint in its entirety. The Court further finds that the Commission issued an Order denying Michael R. Mulvey's Motion for Rehearing on April 25, 1995. The Court further finds that Articles X, XI, XII, and XVI of Plaintiff's First Amended Petition assert claims for violations of Commission Rules 27, 31, 37, 38, 40 and

for violation of § 91.143 of the Natural Resources Code.

It is, therefore, ordered that all claims asserted by the Plaintiff in Plaintiff's First Amendment Petition, to the extent based on an alleged violation of one or more Commission rules, or violation of the Natural Resources Code § 91.143, are dismissed for lack of subject matter jurisdiction.

Essentially, the trial court conceded to the jurisdiction of the Commission and accorded complete deference to its March 14 decision regarding Mulvey's claims.

 The authority of the Commission is not constitutional in nature and derives from legislative grants of power and jurisdiction. TEX. NAT. RES.CODE ANN. §§ 85.201 et seq. (Vernon 2001). Specifically, the Texas Natural Resources Code grants the Commission the power to regulate production and prevent waste, which is accomplished through the promulgation of orders, rules and regulations. *Id.* § 85.202. Orders of the Commission made within the parameters of its delegated authority are immune from collateral attack and conclusively presumed to be valid unless directly attacked in a proceeding instituted for that purpose. *Grimes v. Dorchester Gas Producing Co.*, 707 S.W.2d 196, 205 (Tex.App.-Amarillo 1986, writ ref'd n.r.e.); *see also Imperial Am. Res. Fund v. R.R. Comm'n*, 557 S.W.2d 280, 284 (Tex.1977) (deeming final orders of the Commission "prima facie valid"); *H.G. Sledge, Inc. v. The Prospective Inv. & Trading Co., Ltd.*, 36 S.W.3d 597, 602 (Tex. App.-Austin 2000, pet. denied) (same). When presented with a final decision of the Commission, this Court may not substitute its judgment for that of the Commission "on questions committed to agency discretion." TEX. GOV'T CODE ANN. § 2001.174 (Vernon 2000).

 Trial courts may share jurisdiction with the Commission and must fully assume jurisdiction for certain questions involving oil and gas production; examples include the determination of property rights and quieting title, legal construction of oil and gas contract provisions, and other matters not statutorily committed to the discretion of the Commission. *See Jones v. Killingsworth*, 403 S.W.2d 325, 328 (Tex. 1965); *Grimes*, 707 S.W.2d at 205; *see also Amarillo Oil Co. v. Energy–Agri Prods., Inc.*, 794 S.W.2d 20, 26 (Tex.1990). However, with regard to decisions of the Commission promulgated within the scope of its regulatory authority, trial courts are mandated to take judicial notice of such decisions. *See Hill v. Heritage Res.*, 964 S.W.2d 89, 137 (Tex.App.-El Paso 1997, pet. denied). Trial courts cannot impose their own judgment on Commission decisions or allow a collateral attack to be launched by parties before them. *See Alamo Express, Inc. v. Union City Transfer*, 158 Tex. 234, 309 S.W.2d 815, 827 (1958) (concluding that collateral attack on a Commission order was impermissible because administrative statutes provided sole method of attack); *Pub. Util. Comm'n v. Allcomm Long Distance*, 902 S.W.2d 662, 666 (Tex.App–Austin 1995, writ denied) ("Generally, an agency's final order, like the final judgment of a court of law, is immune from collateral attack.").

 Mulvey complains of the striking of three subdivisions, Articles X, XI, and XIII, from his first petition on the grounds that the trial court lacked subject matter jurisdiction.[4] Although Mulvey claims that the struck articles involved questions of title, which were beyond the proper jurisdiction of the Commission, we disagree. Article X of Mulvey's petition

---

4. A fourth article was also struck but has not been appealed.

contests the well permits and allowables awarded to Pecos and Bay Rock by the Commission. Article XI contests enrichment and conversion of hydrocarbons and sale proceeds from the wells permitted by the Commission to Pecos and Bay Rock. Article XIII similarly claims that permits granted to Pecos and Bay Rock by the Commission were improperly granted. All these articles primarily involve questions of permits, allowables, and exceptions, which Mulvey himself concedes lie within the primary jurisdiction of the Commission. Mulvey alleges that fraudulent misrepresentations were made by Pecos, Bay Rock and appellees in the proceedings before the Commission leading to issuance of the permits. However, "that type of fraud would consist of intrinsic fraud in the obtaining of the Commission order and, accordingly, would not support a collateral attack upon the validity of that order." *Grimes,* 707 S.W.2d at 205.

Commission orders can be directly attacked if they are clearly illegal, unreasonable or arbitrary. *Houston Lighting & Power Co. v. Railroad Comm'n of Tex.,* 529 S.W.2d 763, 767 (Tex.1975); *accord Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). However, such an attack must be launched directly against the Commission itself and must be filed in Travis County: "Any interested person who is affected by the conservation laws of this state or orders of the Commission relating to oil or gas and the waste of oil or gas, and who is dissatisfied with any of these laws or orders, may file suit against the Commission or its members in a court of competent jurisdiction in Travis County to test the validity of the law or order." TEX. NAT. RES.CODE ANN. § 85.241 (Vernon 2001).

Mulvey failed to do this and thus, neglected to take advantage of the administrative remedies available to him. Instead he has attempted to indirectly attack the decision of the Commission by insinuating that the permitting decisions made by the Commission could not have been reached in the absence of fraud. The trial court has no power to entertain collateral attacks of Commission decisions made within the scope of its properly delegated authority, and thus the three articles in Mulvey's first petition collaterally attacking the Commission order were not within the jurisdiction of the court. As such, those articles were properly struck. Granting Mulvey an opportunity to amend the petition is unnecessary, as no amendment would render this collateral attack permissible and Mulvey has already utilized several opportunities to amend his pleadings.

Mulvey argues that the supreme court's decision in *Amarillo Oil,* 794 S.W.2d at 26, which held that the Commission has no authority to determine title and ownership of property, construe a lease or grant an injunction, demonstrates that the trial court could properly maintain jurisdiction over his asserted causes. However, we have already determined that the causes of action struck by the plea to the jurisdiction do not involve matters such as those listed above which would require the expertise and authority of the trial court. Also, the supreme court never overruled determinations made by the Commission or allowed a collateral attack, and instead simply determined that there were causes of action separate from the matters covered in the Commission's orders. *See id.* at 27–28. Here, in the articles specifically struck from Mulvey's petition, there were no allegations of acts by appellees that were not covered by the Commission's order.

Thus, we conclude that the trial court did not err in granting appellee's plea to the jurisdiction, and we overrule Mulvey's first issue on appeal. Because Mulvey has

already utilized several opportunities to amend his petition accordingly, we decline to allow him further opportunity to amend.

### Special Exceptions

By his second issue, Mulvey argues that the trial court should not have granted appellees' special exceptions to his second amended petition.

 Trial courts have broad discretion to sustain or deny special exceptions as a particular case may require; their decisions are therefore reviewed on appeal under an abuse of discretion standard. *Kutch v. Del Mar College*, 831 S.W.2d 506, 508 (Tex.App.-Corpus Christi 1992, no writ). The test for an abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985). Also, when reviewing a dismissal based on special exceptions, we accept as true all material factual allegations and all factual statements reasonably inferred from the pleadings. *Sorokolit v. Rhodes*, 889 S.W.2d 239, 240 (Tex.1994). If special exceptions are sustained, the pleader may amend to meet the exceptions or decline to amend and test on appeal the validity of the trial court's rulings on the special exceptions. *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex.1998); *Cox v. Galena Park Indep. Sch. Dist.*, 895 S.W.2d 745, 749 (Tex.App.-Corpus Christi 1994, no writ).

Mulvey repeats his arguments regarding the plea to the jurisdiction in his complaints about the granting of the special exceptions. He asserts that because the special exceptions were based on the articles struck by the plea to the jurisdiction, the exception should not have been granted and should be reversed because the plea to the jurisdiction should not have been granted. He offers no new or additional argument to support his claim. Having overruled his objection to the plea to the jurisdiction, we similarly overrule these contentions regarding the granting of the special exceptions.

Mulvey also complains that the order granting special exceptions was defective on several procedural grounds. He complains specifically that there was a discrepancy between the articles struck from his original petition by the trial court's order on the plea to the jurisdiction, and those struck by appellees' special exceptions that were granted by the trial court.

In its order regarding the plea to the jurisdiction, the trial court broadly ordered that "all claims asserted" that were "based on an alleged violation of one or more Commission rules or violations of the Natural Resources Code §§ 91.143" were to be dismissed for lack of subject matter jurisdiction. Then, in the order replying to appellees' requested special exceptions, the trial judge granted the exceptions to only those claims that dealt with Commission rules or violations of the natural resources code section 91.143 and claims, uncontested on appeal, concerning Mulvey's assertions that he was owed unliquidated damages. From the analysis in the previous section, we have determined that the original order granting appellees' plea to the jurisdiction was reasonable. Thus, it was not an abuse of discretion, and the trial court properly took its earlier determination regarding jurisdiction into consideration when the special exceptions were granted. *See Kutch*, 831 S.W.2d at 508.

Mulvey also asserts it was error for the trial court to grant appellees' special exception number 4, which took exception to Article XVIII of Mulvey's second amended petition. Mulvey argues that "the violations claimed in Article XVIII had not even occurred when the first petition was

filed," and therefore the plea to the jurisdiction, which considered only the first petition, could not also be prospectively applied to the pleas contained in Article XVIII.

The first petition, upon which the plea to the jurisdiction was based, was filed November 22, 1994. Article XVIII of the second amended petition discusses violations that began between May 23 and August 17, 1994, when the well operators allegedly re-completed the 71–2 well, which had previously been plugged, and began unauthorized production. Mulvey complained this was a violation of Commission rules. All complaints based on violations of Commission rules were barred by res judicata in the trial court's earlier order on the plea to the jurisdiction. Thus, the claimed violations had occurred prior to the first pleading and to the trial court's order dismissing all such claims for lack of subject matter jurisdiction. We conclude there was no error by the trial court in granting appellees' special exception number 4.

The Pecos Investors have urged this Court to follow the language of *Dodson v. Citizens State Bank of Dalhart,* 701 S.W.2d 89, 95 (Tex.App.-Amarillo 1986, writ ref'd n.r.e.), which provides that appellant, in filing a newer amended petition restating his allegations to conform with special exceptions, waived any complaint that he might have had about the court's action in sustaining those exceptions to his former pleading. However, our Court has never held that amending pleadings in response to an order of the trial court on special exceptions waives the party's ability to contest that order on appeal, and we decline to do so here.

Therefore, without applying *Dodson,* we overrule Mulvey's second issue on appeal.

## Non–Operators' Motion for Summary Judgment

By his third issue, Mulvey asserts that the trial court erred in granting the non-operator appellees' motion for summary judgment.[5] Mulvey contends that the order granting the appellees' motion for summary judgment was overbroad and covered claims of direct liability that were not raised in the motions. He also contends that appellees are vicariously liable for the acts and omissions of the operators by their authorization and ratification of the illegal acts of Pecos and Bay Rock.

This Court reviews summary judgments de novo. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994); *Tex. Commerce Bank–Rio Grande Valley, N.A. v. Correa,* 28 S.W.3d 723, 726 (Tex.App.-Corpus Christi 2000, pet. denied). We take as true all evidence favorable to the non-movant and indulge every reasonable inference in the non-movant's favor. *Trigo v. Munoz,* 993 S.W.2d 419, 421 (Tex.App.-Corpus Christi 1999, pet. denied). When the trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm if any of the theories advanced are meritorious. *See Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001); *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *Krishnan v. Law Offices of Preston Henrichson, P.C.,* 83 S.W.3d 295, 303 n. 4 (Tex.App.-Corpus Christi 2002, pet. denied).

There are two kinds of summary judgment motions: traditional and no evidence. To prevail on a traditional motion for summary judgment, the moving party has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R.

---

**5.** The non-operator appellees are all appellees except Pecos and Bay Rock.

CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995) (per curiam); *Tweedell v. Hochheim Prairie Mut. Ins. Ass'n*, 1 S.W.3d 304, 306 (Tex.App.-Corpus Christi 1999, no pet.). A no evidence summary judgment asserts there is no evidence of one or more essential elements of claims upon which the opposing party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i). A no evidence motion for summary judgment is properly granted only if the non-movant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to the challenged element of the claims. *See id.; AMS Constr. Co. v. Warm Springs Rehab. Found.*, 94 S.W.3d 152, 159 (Tex.App.-Corpus Christi 2002, no pet.). When reviewing an order granting summary judgment, the appellate court must also carefully consider the extent of that order, as a summary judgment cannot be affirmed on appeal if it relies on grounds that were not expressly set out in the motion or response. *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993).

The motion for summary judgment was filed by the non-operator defendants. This motion was both a traditional and no evidence motion. The trial court's order does not distinguish between the two and simply grants summary judgment for appellees, so we will apply both standards of review.

Mulvey initially claims that the order granting summary judgment to appellees covered claims of direct and vicarious liability, which was an error because appellees had pled in their motion for summary judgment only that Mulvey alleged vicarious liability against them and they were not vicariously liable as a matter of law. In their motions for summary judgment, appellees asserted that as non-operators of the wells at issue, they were not liable for conduct of the operator, and that Mulvey made no allegation that they, as nonoperators and overriding royalty interest owners, ever personally or directly drilled the wells, operated the wells, produced the wells, sold production, entered into contracts or carried out any other act that Mulvey claims was done in violation of his rights.

The trial court granted partial summary judgment for appellees, ruling that Mulvey "take nothing from (appellees) on his claims, damages, and exemplary damages relating to or arising from allegations of Operators' conduct, Operators' drilling operations, conversion, trespass, selling and marketing gas, drainage, development and pooling, accounting, unpaid royalties and unjust enrichment claims." This language mirrors exactly the language used in the non-operators' motion for summary judgment. Mulvey has misinterpreted the summary judgment to extend to allegations of direct conduct by appellees. However, all of these items relate to acts or omissions of the operators Pecos and Bay Rock, who were not parties to this proceeding; none of them directly asserts any wrongdoing by the non-operators. Therefore, the trial court confined its grant of summary judgment to those grounds that were raised in the motion, in accordance with *Stiles*. *Stiles*, 867 S.W.2d at 26. The only question remaining for our review is whether there was a genuine issue of material fact as to any elements of Mulvey's causes of action against appellees.

We must interpret the summary judgment motion to apply to only those allegations of vicarious liability for the conduct of operators, as we have concluded above. The order is intended to only address those issues related to the direct acts of the operators. Therefore, Mulvey's allegations that the non-operator appellees owed him royalties directly was not addressed

by this order, and we do not have to consider whether either party raised a genuine issue of material fact as to the royalties.[6] Instead, the only question remaining concerns the liability of the non-operator appellees for the actions of operators Pecos and Bay Rock.

■■■■ Mulvey asserts that appellees face liability for their "authorization and ratification" of the acts of the operators. However, "authorization and ratification" are elements used to determine if an agent-principal relationship exists, and are otherwise not used to establish vicarious liability of two parties outside of an agency relationship. *See, e.g., Texam Oil Corp. v. Poynor,* 436 S.W.2d 129, 130 (Tex.1968); RESTATEMENT (SECOND) OF AGENCY § 82. Mulvey failed to allege any agency relationship existed between the non-operator appellees and the operators. Mulvey also claims that the Pecos Investors specifically should face liability as co-tenants of the oil wells with Pecos and Bay Rock. However, Mulvey is misconstruing the power structure between parties in an operator/non-operator relationship. The non-operator in a farmout retains an overriding royalty interest, which is not a tangible or real property interest, and cannot dictate the actions of the operator. *See H.G. Sledge,* 36 S.W.3d at 599 n. 2 ("Although carved out of the working interest, an overriding royalty interest confers no right to drill, develop, or produce the oil and gas under the leased tract and this is viewed as *non-possessory,*") (citing 8 WILLIAMS & MEYERS, OIL & GAS LAW 1191 (1999) (emphasis added).). It is the operator who has the exclusive right to drill, produce and exploit the minerals, and who also bears the burden of paying all operating and drilling costs and

royalties. *Id.* at 599 n. 3 (citing 8 WILLIAMS & MEYERS at 1191).

■■ The relationship between the operator and non-operator is purely contractual and therefore dictated by the contract terms, absent some other special relationship created by the parties. *See Cambridge Oil Co. v. Huggins,* 765 S.W.2d 540, 544 (Tex.App.-Corpus Christi 1989, writ denied). The contract in this case states: "Operator shall have charge of the management, development, and operation of the lands including in the Unit Area for the production of oil, gas, and other minerals therefrom." Thus, by the contract, the non-operators retained no ability to direct or control the actions of the operators related to gas production.

As Pecos and Bay Rock were not acting as agents of the non-operator appellees, and as those appellees had no contractual ability to control or direct the production of gas or the payments of royalties by Pecos and Bay Rock to Mulvey or any other party, the trial court was correct in granting the non-operator appellees' motion for summary judgment. The non-operator appellees have demonstrated that there is no material issue of genuine fact and they are entitled to judgment as a matter of law, thus fulfilling the requirements of the traditional motion for summary judgment. Furthermore, appellees have successfully demonstrated that there is no evidence of their liability for Mulvey's claims against them, and Mulvey has failed to raise a scintilla of evidence indicating otherwise. Accordingly, both the no-evidence and traditional motions for summary judgment could have properly been granted and Mulvey's third issue on appeal is overruled.

---

**6.** These claims are in fact dealt with in the following section which addresses the 1951

JOA.

### Joint Operating Agreement

By his fourth issue on appeal, Mulvey contends that the trial court erred in granting summary judgment to appellees on Mulvey's 1951 JOA-related claims. Appellees joined in a traditional motion for summary judgment asserting that Mulvey was not a party to the 1951 JOA and lacks standing to seek enforcement or damages under the agreement, and his claims are barred by various forms of estoppel.

As discussed in the previous section, we will review the granting of this motion de novo, indulging all evidence and inferences in the non-movant's favor. *See Natividad,* 875 S.W.2d at 699; *Trigo,* 993 S.W.2d at 421. We will affirm if any theory advanced is meritorious. *See Dow Chem. Co.,* 46 S.W.3d at 242.

Mulvey asserts that the non-operator appellees are liable to him for damages because Pecos, financed by its investors, entered into farmout agreements with Mobil and Arco under which Pecos drilled the Block 71–1 and 71–2 wells to earn assignments of Mobil and Arco's leases. He claims that the farmouts should have been subject to the preferential right to purchase provision of the 1951 JOA, and that Arco and Mobil violated the JOA when it made the farmouts to Pecos without first offering the right to Mulvey. Further, he asserts that all the appellees, not just Arco and Mobil, breached the 1951 JOA by drilling, producing and operating the two wells and that he is accordingly owed royalties from all parties.

 Appellees initially dispute that Mulvey can even assert standing as a party to the 1951 JOA given that he too joined the agreement without the notice and right-to-purchase provisions being fulfilled by his predecessor in interest. We disagree and conclude that Mulvey, as the assignee and successor to an original party to the 1951 JOA, does have standing to

make this claim. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex.1996).

Appellees also argue that Mulvey is estopped from asserting that the farmout to Pecos violated the JOA because he entered into an agreement with Pecos regarding the farmout of which he now complains in the 71–1 well, and because he initiated a Mineral Interest Pooling Act ("MIPA") proceeding for the 71–2 well, subjecting himself to the jurisdiction of the Railroad Commission. We interpret these arguments as asserting multiple claims of quasi estoppel.

 Quasi estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him. *Lopez v. Munoz, Hockema & Reed,* 22 S.W.3d 857, 864 (Tex.2000); *see also Bristol–Myers Squibb Co. v. Barner,* 964 S.W.2d 299, 302 (Tex.App.-Corpus Christi 1998, no pet.). The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced, or of which he accepted a benefit. *See Lopez,* 22 S.W.3d at 864; *Atkinson Gas Co. v. Albrecht,* 878 S.W.2d 236, 240 (Tex.App.-Corpus Christi 1994, writ denied). Quasi estoppel forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid corresponding obligations or effects. *Atkinson Gas Co.,* 878 S.W.2d at 240 (citing *Mexico's Industries, Inc. v. Banco Mexico Somex, S.N.C.,* 858 S.W.2d 577, 581 n. 7 (Tex.App.-El Paso 1993 writ denied); *Turcotte v. Trevino,* 499 S.W.2d 705, 712–13 (Tex.App.-Corpus Christi 1973, writ ref'd n.r.e.)). The doctrine essentially requires (1) a previous action and (2) a subsequent inconsistent action which is thereby sought to be estopped. A preferential

right to purchase, or right of first refusal, in particular is affected by an inconsistent action, as such a right can be automatically terminated by lapse of time or by conduct of the offeree clearly inconsistent with an intention to purchase. *See A.G.E., Inc. v. Buford,* 105 S.W.3d 667, 673 (Tex.App.-Austin 2003, pet. denied) ("Acquiescence in a sale that violates one's right of first refusal constitutes conduct inconsistent with an intention to purchase and therefore terminates the offer.").

Included in the record is a signed and dated document titled "Assignment of Interest in Production" in which Pecos assigns an undivided one-twelfth interest in the 71–1 well to Mulvey. The document explicitly refers to Pecos' farmout agreement with Mobil and Arco and notes that "Assignee [Mulvey] represents and warrants that the interest assigned hereby is free and clear of all liens and encumbrances of any kind or character."

Mulvey clearly has, through this assignment, recognized and benefitted from the very farmout to Pecos by Mobil and Arco of which he now complains. We conclude that he is estopped from making this complaint and therefore his grounds for appealing the summary judgment of the trial court, at least with regard to the 71–1 well, are unfounded. Mulvey's rights regarding the 71–2 well are somewhat different in origin. With respect to this well, Mulvey apparently made an unsuccessful attempt to enter another voluntary assignment agreement with Pecos, the well operator. When this effort failed he then initiated MIPA proceedings before the Railroad Commission for forced pooling. *See* Tex. Nat. Res.Code Ann. § 102.011 (Vernon 2001). At the conclusion of this proceeding, referred to as Oil and Gas Docket No. 2–97041 and dated April 6, 1992, the Com-

mission found that the production from the well "shall be allocated to working interest owners on the basis of surface acreage of the tracts contained in the unit." They further found that Mulvey "will pay to Bay Rock Operating [the predecessor to Pecos] his pro rata working interest share of the cost of drilling, completing and operating the well, plus a penalty of one-hundred percent of that cost."

Therefore, Mulvey has already asserted his interest in the proceeds from the well, brought an administrative proceeding to enforce his rights, and was awarded a specific amount of royalties from the production of the 71–2 well, though this was apparently mitigated by the accompanying penalty. Regardless of the accompanying penalty, Mulvey is estopped from now asserting that the 71–2 well farmout to Pecos and its successor Bay Rock was improper under the 1951 JOA, as he has already benefitted from the Commission's decision regarding the division of profits from the farmout. As discussed above, Mulvey may not employ a claim in trial court as a vehicle from which to launch a collateral attack on a statutorily valid agency decision. Thus, he is estopped from both maintaining that the farmout is improper when he has already benefitted from it and from attacking the validity of the MIPA order.

Accordingly, Mulvey's fourth issue is overruled.

### Severance

■■■ By his fifth issue, Mulvey complains that the trial court erred and abused its discretion in granting a severance of cause number 13–03–056–CV, styled *Mulvey v. Pecos Development Corp. et al.,* from the other claims Mulvey brought against various defendants.[7]

***

**7.** It was by a separate order that the trial court also severed Mulvey's claims against

However, we find that Mulvey failed to preserve any objection to the order granting severance to Pecos, Bay Rock and the Pecos Investors, and has thus waived his complaint. *See* TEX.R.APP. P. 33.1. Mulvey denies that he waived this complaint. His assertion, however, is not supported by the record, which includes a motion for new trial from Mulvey following the entry of the various orders against him in which he raises the other four issues previously discussed but fails to object to the motion of severance. Mulvey did object to the severance of Arco, Mobil and Vastar, and in that case (cause number 7346–C–1), he did file a "Motion to Withdraw Orders Granting Summary Judgment and Severance and Motion for Joinder;" however, this motion related to the severance of appellees Arco, Mobil and Vastar only, and in fact pre-dated the separate order severing the claims against Pecos, Bay Rock and the Pecos Investors. Mulvey is appealing the order of severance in his appeal against Pecos, Bay Rock and the Pecos Investors and not in the case where he had properly preserved his objection, against Mobil, Arco and Vastar. Thus, we conclude that in the case in which he appealed the order granting severance, Mulvey failed to properly preserve his complaint, and thus waived his right to appeal the severance of Pecos, Bay Rock and the Pecos Investors.

Mulvey's fifth and final issue is overruled, and the judgments of the trial court in both *Mulvey v. Pecos Development Corp. et al.*, 13–03–056–CV, and *Mulvey v. Mobil Producing Texas and New Mexico et al.*, 13–02–650–CV, are affirmed.

Mobil, Arco and Vastar, cause number 13–02–650–CV, styled *Mulvey v. Mobil Producing Texas & New Mexico et al.*