

NUMBER 13-11-00677-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GAYE DAWN HESTER,                                                        Appellant,

v.

TIMOTHY WADE PRICKETT,                                              Appellee.

On appeal from the 28th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Vela**

This is an appeal from a summary judgment granted in favor of appellee, Timothy

Wade Prickett, and against appellant, Gaye Dawn Hester.   Hester, Prickett's former wife,

brought a bill of review seeking to set aside an agreed divorce judgment with regard to a

property settlement.   Hester brings one issue on appeal, asserting that the trial court

erred in granting Prickett's traditional and no-evidence motion for summary judgment. We reverse and remand.

## I. FACTUAL BACKGROUND

The summary judgment evidence offered by Hester showed that Prickett and Hester were married in 1999. She filed for divorce in 2006 because of Prickett's claimed abusive behavior. During the early years of their marriage, Prickett was convicted of criminal mischief for assaulting a friend and placed on probation for two years. According to Hester, throughout their marriage, Prickett consistently verbally abused both Hester and her daughter from another marriage.

In 2005, Devin Nevilles, owner of Eagle Testing Services, L.P. and Eagle Services ("Eagle Testing"), hired Prickett as a crane operator. Due to Prickett's seventh grade level education, he brought his employee contract home to his wife to review before signing it. In the provision below, the agreement stated that Prickett would have the opportunity to become a limited partner with Nevilles in a future business project:

> As additional bonus compensation, Employee shall be awarded a 20% *limited partnership interest in a Crane Services Company which will be known as Eagle Services Crane Division, L.P.* such award shall not be earned or payable until Devin Nevilles recovers all his investment, plus taxes, related to the crane operations assigned to Employee herein.

(emphasis in the original).

While at Eagle Testing, Prickett traveled for work and was rarely at home with Hester. According to Hester, Prickett only allowed her to visit him at work if the visit was on his terms. Hester's knowledge of her former husband's work situation was limited because she chose not to question Prickett's business activities because of his violent

2

tendencies. However, at some point in their marriage, Prickett told Hester that he and Nevilles were undertaking a new business venture, Eagle Crane and Rigging.

Hester's summary judgment evidence shows that she filed for divorce in March 2006 after seven years of marriage. Consequently, Hester immediately requested a temporary restraining order that the trial court granted on April 6, 2006. On the very same day, Hester requested Prickett to provide her with information concerning his employment, i.e. financial statements and stock ownership. However, Hester submitted summary judgment evidence to show that Prickett failed to respond to her first request.

As a result of Prickett's failure to respond, Hester sent a formal discovery request that specifically asked Prickett to disclose his ownership interest in Eagle Testing, his financial records, and records of his income. Prickett failed to produce a written response to this discovery request, but Hester averred that Prickett verbally threatened Hester on the telephone. During this call, Hester's affidavit stated that Prickett claimed he had no ownership interest as a mere employee in Eagle Testing. According to Hester, he further explained that Eagle Crane & Rigging had no assets because the future company was not yet officially formed. Hester stated that Prickett threatened her during this phone call and warned her that she would be sorry if she forced him to waste money on an attorney. Hester averred that she was greatly disturbed by this conversation and feared for her and her daughter's safety.

At some point during the summer of 2006 and no later than August 1, 2006, Prickett was made aware that there was a pending sale of Eagle Testing to Express Energy, a Houston company. As a result of the sale, Prickett understood he would

3

receive a non-employee compensation of at least $1 million. His complete understanding is evidenced by affidavits from other Eagle Testing employees, who admitted Prickett told them he was keeping his interest in the company a secret from his wife.

Hester consented to the final divorce decree in September of 2006 and Prickett was awarded his interest in Eagle Crane & Rigging. The decree contained no reference to a potential $1 million payout from the sale of Eagle Testing. Approximately six weeks after the divorce was finalized, Eagle Testing was sold to Express Energy. Prickett received $1 million.

Hester averred that she remained unaware of Prickett's concealment of the facts and his knowledge regarding the sale and non-employee compensation until 2010. After the situation was brought to her attention, Hester filed a bill of review to rescind the property agreement in the final divorce decree.

## II. ANALYSIS

### A. Standard of Review

In a summary judgment case, the movant must show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–216 (Tex. 2003); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). The movant carries the burden of proof. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). A defendant that conclusively negates at least one essential element of the plaintiff's

4

cause of action is entitled to summary judgment. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Klentzman v. Brady*, 312 S.W.3d 886, 896–97 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The burden to raise a fact issue shifts to the non-movant only after the movant has established that it is entitled to summary judgment as a matter of law. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989).

We review a traditional motion for summary judgment *de novo*. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007); *Valence Oper. Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). We consider the evidence in the light most favorable to the non-movant and resolve all doubts in the non-movant's favor. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as a ground for reversal. *See* TEX. R. CIV. P. 166a(c); *City of Houston,* 589 S.W.2d at 677.

A party moving for a traditional summary judgment must affirmatively show that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law. *Knott*, 128 S.W.3d at 215–15; *Mulvey v. Mobil Producing Tex. and N.M. Inc.*, 147 S.W.3d 594, 604–05 (Tex. App.—Corpus Christi 2004, pet. denied); TEX. R. CIV. P. 166a(c). A party moving for a no-evidence summary judgment must demonstrate that the non-movant has failed to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to the challenged element. *Mulvey*, 147 S.W.3d at 604–05; TEX. R. CIV. P. 166a(i). When a party moves for summary judgment on both traditional and no-evidence grounds, we first review the trial court's decision under the

5

no-evidence standard. *See* Tex. R. Civ. P. 166a(i); *Mem'l Hermann Hosp. Sys. v. Progressive Cnty. Mut. Ins. Co.*, 355 S.W.3d 123, 126 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

## B. Discussion

Prickett's motion for summary judgment is titled as both a traditional and no-evidence motion for summary judgment. First, with respect to Prickett's no-evidence motion for summary judgment, he urges that Hester has produced no evidence of extrinsic evidence unmixed with any negligence of her own. Similarly, with respect to the traditional motion he urges the same—that Hester has produced no evidence of extrinsic fraud unmixed with any negligence on her part.

As noted, Hester filed this action as a bill of review alleging that she had been defrauded. In order to obtain relief by bill of review, the movant for the bill must show: (1) a meritorious defense to the cause of action alleged to support the judgment, (2) which she [appellant] was prevented from making by the fraud, accident, or wrongful act of the opposite party, (3) unmixed with any fault or negligence of her [appellant's] own. *See Rathmell v. Morrison*, 732 S.W.2d 6, 13 (Tex. App.—Houston [14th Dist.] 1987, no writ) (citing *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950)). The alleged fraud must be extrinsic. *Alexander v. Hagedorn*, 226 S.W.2d at 1001. Extrinsic fraud is defined as that which denies a party the opportunity to fully litigate all the rights or defenses that the party was entitled to assert. *Id.* In contrast, intrinsic fraud is "inherent in the matter considered and determined in the trial where the fraudulent acts pertain to an issue involved in the original action, or where the acts constituting fraud were, or could

6

have been litigated therein." *Montgomery v. Kennedy*, 669 S.W.2d 309, 312 (Tex. 1984).

Prickett argues that summary judgment was proper because there was no evidence with respect to extrinsic fraud and that Hester's ignorance of the facts was due to her own negligence in not pursuing discovery and by agreeing to the division of property.

The evidence Prickett included in his motion for summary judgment in an attempt to show that Hester could not prove fraud was an affidavit by Bruce Matzke, Prickett's trial attorney, who averred that he represented Prickett in the trial proceedings and that the only discovery requested by counsel for Hester was a set of interrogatories and requests for production. Matzke also attached a proposed final decree prepared by Hester's attorney. Prickett argues that rather than pursuing discovery, Hester submitted the decree that was signed by all parties. Thus, Prickett argues there was no extrinsic fraud and Hester's negligence was the cause of her failure to learn of the one million dollar payment to Prickett.

In response to the motion for summary judgment, Hester submitted summary judgment evidence to support her theory that Prickett's failure to disclose the extent of his relationship with Eagle Testing that clearly inhibited Hester from fully litigating her case and thus, constituted extrinsic fraud. She first submitted the affidavit of her trial attorney, James Harris, who averred that he had not had adequate time to conduct discovery. He stated that his belief was that there was a need for further discovery concerning extrinsic fraud through Prickett's concealment of his partnership interest in Eagle Testing Services.

7

L.P.

Hester also submitted her own affidavit in which she stated that during the time they were married Prickett never told her that he was a partner with Devin Nevilles or that he had already earned a partnership interest in the company he was working for—Eagle Testing Services, L.P. and Eagle Services. She stated that she immediately requested her husband to disclose all assets, including any business interest or entitlement whether by stock option or otherwise. Hester averred that her husband called her and told her that he did not have any ownership in the business and was merely an employee. Prickett told her that he would make her sorry if she made him waste his time and money on a lawyer to answer discovery. Hester stated she relied on his representation and consented to the property division. She said that she did not know that Eagle Testing Services, L.P. was approached to sell to another company in June 2006, nor did she learn about the pending sale of Eagle Testing and Express Energy, the sale and Prickett's claim of partnership ownership in Eagle Testing, or the one million dollars that he received for his ownership interest in the sale or Eagle Testing until shortly before she filed the bill of review in 2010.

Hester also submitted an affidavit from Terry Wayne Chandler, an employee of Eagle Testing Services, L.P. with Prickett in 2005 and 2006. According to Chandler, Prickett told him multiple times between August and September of 2006 that he was going to get one million dollars from the sale. Roger Hubert, another employee of Eagle Testing Services, L.P. also signed an affidavit stating that beginning on August 1, 2006 through September 2006, Prickett told him that his interest in Eagle Testing Services, L.P.

8

was a secret that his wife did not know about. He did not want her to find out about it because he was getting a divorce from her. An affidavit from Zach Zucker, another Eagle Testing Services, L.P. employee, was also admitted as summary judgment evidence. He averred that when he inquired if Hester would own 50% of the business as part of the divorce, Pricket replied that she would not because he had taken care of that.

Thus, the issue to be decided is whether Hester raised an issue of fact with respect to whether the fraud in this case was extrinsic. We note that while misrepresenting the value of known community assets does not alone constitute extrinsic fraud, misrepresentation in addition to threats does, in fact, constitute extrinsic fraud. *Rathmell v, Morrison*, 732 S.W.2d 6, 14 (Tex. App.—Houston [14th Dist.] 1987, no writ). Fraudulent concealment, in addition to threats designed to coerce a spouse into not investigating the other party's financial status, is sufficient to establish extrinsic fraud without negligence on the appellant's part. *See id.* at 14. In *Morrison*, the divorced wife also sought to set aside a property agreement based on extrinsic fraud committed by her former husband. *Id.* There was evidence that, like Prickett, the former husband in *Morrison* threatened his wife to coerce her into settling their property agreement. *Id.* On appeal, the *Morrison* Court held that even this non-physical threat, coupled with misrepresentation of community property value, constituted extrinsic fraud. *Id.* By applying this reasoning to the case at bar, the summary judgment evidence raises a fact issue that Prickett physically threatened Hester. Thus, the evidence raised by Hester with respect to Prickett's violent nature, coupled with his misrepresentation of community assets, clearly exceeds the level of threat in *Morrison* and likewise constitutes evidence

9

sufficient to raise a fact issue on extrinsic fraud.

When a spouse is under a duty during settlement negotiations in a divorce to disclose material information to the other spouse and the secretive disclosure leads to reasonable reliance on an erroneous understanding, the agreement or divorce decree is subject to rescission. *Boyd v. Boyd*, 67 S.W.3d 398, 404–05 (Tex. App.—Fort Worth 2002, no pet.). A duty to disclose arises from either a fiduciary relationship or where the spouse is under a duty to speak "by force of circumstances." *Id.* at 405. Here, Prickett was under a duty to speak by "force of circumstances" three different times during the divorce proceedings: (1) when the trial court's temporary injunction was issued, (2) during the partial disclosure on the telephone with Hester, and (3) when Prickett discovered he would be receiving a non-employee compensation from the sale of Eagle Testing.

With regard to the temporary injunction issued by the trial court, Prickett agreed to the terms of the injunction, which prohibited him from "destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of the property of one or both parties." This injunction also stated either party should refrain from "misrepresenting or refusing to disclose to the other party or to the Court, on proper request, the existence, amount, or location of any property of one or both of the parties." Clearly, Prickett failed to meet this duty to speak.

Furthermore, Prickett also failed to meet his duty to speak under "force of circumstances" in his partial disclosure to Hester over the telephone. If a spouse does, in fact, choose to disclose some information, as the case here, such disclosure must be

complete and accurate. *Id.* During his phone call to Hester, there was evidence that Prickett claimed that he was just an employee and had no partnership interest in the company. This was a partial disclosure purposefully used by Prickett to convey a false impression that he would not be entitled to any additional payout. There was summary judgment evidence offered to show that Prickett knew he was going to receive employee compensation in the event of a company sale; therefore, evidence of this concealment is an issue of fact to be decided by a jury.

Finally, Prickett also had a duty to speak "by force of circumstances" when he learned about his non-employee compensation in August of 2006. There was evidence that Prickett failed to disclose the new information, which would have made his prior financial representation inaccurate. Even without a fiduciary duty, Prickett had a duty to disclose the new information when it was brought to his attention prior to the divorce decree's finalization. Fraud occurs when one makes a representation, but fails to disclose new information that makes the earlier representation misleading or untrue. *E.g. Playboy Enterprises, Inc. v. Editorial Caballeros, S.A. de C.V.*, 202 S.W.3d 250, 260 (Tex. App.—Corpus Christi 2006, pet. denied); *Lesikar v. Rappeport*, 33 S.W.3d 282, 299 (Tex. App.—Texarkana 2000, pet. denied). The evidence showed Prickett undoubtedly knew about the pending sale prior to the divorce and purposely concealed this information from Hester.

While Prickett is correct in asserting that once both spouses are represented by counsel the parties are no longer under a duty to disclose, there was summary judgment evidence Prickett chose to only partially disclose his financial situation. When one

11

voluntarily discloses certain information, he or she must disclose the whole truth to avoid making a false impression.  *See Boyd*, 67 S.W.3d at 405.   Evidence that Prickett made a threatening telephone call to Hester, partially disclosing incorrect information, if taken as true for purposes of the summary judgment, is sufficient to create a fact issue.

In her bill of review petition, Hester presented evidence that Prickett unmistakably knew he was going to be receiving the non-employee compensation and evaded disclosing his financial situation after formal discovery.   In addition, Hester provided summary judgment evidence that Prickett verbally threatened her on the telephone and warned her about the consequences, if she chose to pursue the issue further.   Based on the summary judgment evidence presented, there is a genuine issue of material fact that Prickett committed extrinsic fraud unmixed with any negligence on the part of either Hester or her attorney.

Therefore, we find Hester raised a fact issue that extrinsic fraud was committed, precluding summary judgment.   Likewise, we conclude the she provided the trial court with more than a scintilla of probative evidence to raise a genuine issue of material fact that the property agreement was obtained through extrinsic fraud.   Thus, the judgment rendered against Hester on her bill of review action, seeking to re-adjudicate the division of community property between her and Prickett, is reversed and remanded to the trial court for trial on the merits of Hester's bill of review.[1]

---

[1] While appellee raises the issue that his objection in the trial court to Hester's summary judgment affidavit was allegedly a "sham," this Court does not need to address this issue.   An objection to a "sham" affidavit is subject to the same rules as any other objection to summary judgment, such that there must be a ruling or order on the objection.  *Arellano v. Americanes USA, LLC*, 334 S.W.3d 326, 329–330 (Tex. App.—El Paso 2010, no pet.); *Ramirez v. AHP Mut. Housing Ass'n, Inc.*, 2005 WL 425486, *2 n. 2 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

### III. CONCLUSION

We reverse the trial court's judgment and remand to the trial court.


                                        ROSE VELA
                                          Justice

Delivered and filed the
9th day of August, 2012.