**FILED IN**
**14th COURT OF APPEALS**
**HOUSTON, TX**
*04/08/2015*
**CHRISTOPHER A. PRINE,**
**CLERK**

No. 14-14-00485-CV

IN THE COURT OF APPEALS
FOR THE FOURTEENTH DISTRICT
HOUSTON, TEXAS

CAROLYN LARSEN,

APPELLANT,

V.

ONEWEST BANK, FSB,

APPELLEE.

APPEAL FROM 155TH JUDICIAL DISTRICT COURT,
AUSTIN COUNTY, TEXAS

**APPELLEE'S RESPONSE BRIEF**

**DYKEMA GOSSETT PLLC**

Thomas M. Hanson
State Bar No. 24068703
thanson@dykema.com
Kevin A. Teters
State Bar No. 24075678
kteters@dykema.com
**DYKEMA GOSSETT PLLC**
1717 Main Street, Suite 4200
Dallas, Texas 75201
(214) 462-6400 – Telephone
(214) 462-6401 – Facsimile

**April 7, 2015**

# IDENTITY OF PARTIES AND COUNSEL

**PLAINTIFF – APPELLANT:**
**Carolyn Larsen**

> *Trial/Appellate Counsel:*
> Sidney Levine
> 110 Main Street, Suite 201
> P.O. Box 592
> Sealy, Texas 77474
> (979) 885-2989
> (713) 495-9040
> (979) 885-2980 (Fax)
> sealylaw@sbcglobal.net

**DEFENDANT–APPELLEE:**
**OneWest Bank N.A., formerly known as OneWest Bank, FSB**

> *Trial/Appellate Counsel:*
> Thomas M. Hanson
> Texas Bar No. 24068703
> thanson@dykema.com
> Kevin Teters
> Texas Bar No. 24075678
> kteters@dykema.com
> **DYKEMA GOSSETT PLLC**
> 1717 Main Street, Suite 4200
> Dallas, TX 75201
> (214) 462-6400 (Telephone)
> (214) 462-6401 (Facsimile)

## TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|

Identity of Parties and Counsel ................................................................ ii

Table of Authorities ........................................... **Error! Bookmark not defined.**

Statement of the Case.................................................................... ix

Issues Presented .......................................................................x

Statement Regarding Oral Argument ........................................................ xi

I.    Statement of Facts ..................................................................1

    A.    Appellant's Husband Obtained a Reverse Mortgage in 2005 .....................1

        1.    The Loan Agreement.................................................1

        2.    The Note. ...............................................................2

        3.    The Deed of Trust.....................................................2

    B.    Appellant Executed Multiple Loan Documents Establishing that She Was Not a Borrower ................................................................3

    C.    Appellant Knew She Was Not a Borrower When Mr. Larsen Obtained the Loan.......................................................................4

    D.    The Loan Was Not Repaid Following Mr. Larsen's Passing and Foreclosure Proceedings Were Initiated ......................................5

    E.    Appellant Sued OneWest In an Effort to Stop Foreclosure.......................5

    F.    The District Court Granted OneWest's Motion for Summary Judgment and Entered Final Judgment Against Appellant ...............................5

II.    Summary of Argument..................................................................6

III.    Argument and Authorities.............................................................9

    A.    Standard of Review...................................................................9

        1.    Traditional summary judgment standard. ...............................9

2.   Whether the record contains "some evidence" to support Appellant's arguments is not the focus of the Court's review. ..............9

B.   The Record Establishes That Appellant Is Not a Borrower.........................10

    1.   Appellant is not a party to the Loan Agreement or Note. ....................10

    2.   Appellant was ineligible to be a borrower due to her age....................10

    3.   Appellant testified she is not a borrower.............................................11

    4.   Appellant signed multiple loan documents as the "non-borrower."...12

C.   Appellant's Description As a Borrower on the Deed of Trust Did Not Alter Her Legal Status or Prevent OneWest from Accelerating the Loan Following Mr. Larsen's Death.........................................................12

    1.   As an initial matter, Texas law required Appellant to sign the Deed of Trust.........................................................................................12

    2.   Applying the rules of contract construction to the Loan documents, it is indisputable that Mr. Larsen was the only borrower. .................................................................................................13

        (a)   The Court must consider all of the loan documents when determining the parties' intent.......................................................14

        (b)   In a situation where the terms of the Deed of Trust and Note conflict, the terms of the Note prevail. ........................................16

        (c)   A single descriptive label does not alter the clear intention of the parties................................................................................17

        (d)   The Court must attempt to harmonize the provisions of the Note and Deed of Trust. .............................................................18

        (e)   Courts generally may not rewrite contractual provisions............19

D.   The Waiver of Homestead Rights and Special Warranty Deed Are Valid...................................................................................................20

    1.   Texas law permits waiver of homestead rights. ................................21

    2.   The Waiver of Homestead Rights is valid. .......................................22

      3.    The Special Warranty Deed is valid.............................................22

          (a)   Appellant testified she actually intended to convey her interest to her husband. .................................................23

          (b)   The Deed is supported by consideration. ...................................23

  E.    Even if the Waiver of Homestead Rights and/or the Special Warranty Deed Are Invalid, OneWest Still Had the Right to Accelerate the Debt Upon Mr. Larsen's Death.................................................................24

  F.    The Loan's Insurability Has Nothing to Do with Its Validity ...................27

  G.    The District Court Did Not Err in Granting OneWest's Summary Judgment Motion .........................................................................28

IV.  Conclusion.............................................................................................28

Certificate of Compliance ...................................................................................30

Certificate of Service ..........................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Mfrs. Mut. Ins. Co. v. Schaefer,*
124 S.W.3d 154 (Tex. 2003) .............................................................19

*Bierwirth v. BAC Home Loans Servicing, L.P.,*
2012 WL 3793190 (Tex. App.—Austin Aug. 30, 2012, no pet.)........14

*Brandywood Housing, Ltd. v. HCAD,*
No. 14-08-00404-CV, 2010 WL 1752334 (Tex. App.—Houston
[14th Dist.] May 4, 2010, no pet.) ....................................................21

*Braniff Inv. Co. v. Robertson,*
81 S.W.2d 45 (Tex. Comm'n App. 1935)...........................................14

*Cathey v. Booth,*
900 S.W.2d 339 (Tex. 1995) ...............................................................9

*Coastal Plains Dev. Corp. v. Micrea, Inc.,*
572 S.W.2d 285 (Tex. 1978) ........................................................17, 18

*Coker v. Coker,*
650 S.W.2d 391 (Tex. 1983) ........................................................18, 19

*Fed. Deposit Ins. Corp. v. Attayi,*
745 S.W.2d 939 (Tex. App.—Houston [1st. Dist.] 1988, no writ) .....18

*Ferguson v. Ferguson,*
111 S.W.3d 589 (Tex. App.—Fort Worth 2003, pet. denied).......21, 22

*Hunter v. Clark,*
687 S.W.2d 811 (Tex. App.—San Antonio 1985, no writ)................21

*Ingram v. Deere,*
288 S.W.3d 886 (Tex. 2009) .............................................................17

*Jones v. Kelley,*
614 S.W.2d 95 (Tex. 1981)................................................................14

*McKelvain v. Allen,*
58 Tex. 383 (1883)............................................................................14

*Mulvey v. Mobil Producing Tex. & N.M., Inc.,*
147 S.W.3d 594 (Tex. App.—Corpus Christi 2004, pet. denied) ......................9

*Natividad v. Alexsis, Inc.,*
875 S.W.2d 695 (Tex. 1994) ............................................................9

*Neece v. A.A.A. Realty Co.,*
322 S.W.2d 597 (Tex. 1959) ............................................................17

*Pentico v. Mad-Wayler, Inc.,*
964 S.W.2d 708 (Tex. App.—Corpus Christi 1998, pet. denied) ......................16

*Randall's Food Mkts., Inc. v. Johnson,*
891 S.W.2d 640 (Tex. 1995) ........................................................9, 10

*Reilly v. Rangers Mgmt., Inc.,*
727 S.W.2d 527 (Tex. 1987) ............................................................14

*Skelton v. Washington Mut. Bank, F.A.,*
61 S.W.3d 56 (Tex. App.—Amarillo 2001, no pet.) ............................24, 25, 26

*Southwestern Elec. Power Co. v. Grant,*
73 S.W.3d 211 (Tex. 2002)..............................................................10

*Stephanz v. Laird,*
846 S.W.2d 895 (Tex. App.—Houston [1st. Dist.] 1993, writ
denied)...................................................................................17

*Tenneco Inc. v. Enterprise Prods. Co.,*
925 S.W.2d 640 (Tex. 1996) ........................................................21, 22

*Thompson v. Kerr,*
No. 14-08-00978-CV, 2010 WL 2361636 (Tex. App.—Houston
[14th Dist.] June 15, 2010, no pet.) ..................................................21

*In re Tucker,*
391 B.R. 404 (Bankr. S.D. Tex. 2008) ................................................16

*Warren v. Bank of Am., N.A.,*
2012 WL 3020075 (N.D. Tex. June 19, 2012)..........................................15

*Williams v. Williams,*
    569 S.W.2d 867 (Tex. 1978) ..............................................................................21

**Statutes**

12 U.S.C. §1715z-20(b)(1) ........................................................................1, 10

Texas Family Code Section 5.001 ...............................................................13

Texas Property Code 41.001(b)(7) ..............................................................26

24 CFR §206.33 .....................................................................................10, 12

TEX. CONST. ART XVI, §§ 50(a)(7), 50(c)..................................................26

TEX. CONST. ART. XVI §50(k)....................................................................25

TEX. CONST. ART. XVI §50(k)(1) ..........................................................12, 13

Tex. R. Civ. P. 166a(i) ...............................................................................10

Tex. R. Civ. P. 166a(c) ................................................................................9

## STATEMENT OF THE CASE

The underlying case involved Appellant's efforts to prevent foreclosure of a real property lien following non-payment of a loan. Appellant's husband obtained a reverse mortgage loan in 2005. The loan stipulated that it would become due upon his death. When Appellant's husband passed away in 2010, OneWest—the note holder and mortgage servicer—notified Appellant that the loan had become due. The loan was not repaid, and OneWest initiated foreclosure proceedings as a result. Appellant then sued OneWest, claiming that certain of the loan documents were void or, alternatively, that she was also a borrower on the loan (despite having not signed the Note) and the loan was therefore not yet due. After reviewing all of the evidence in the record and the parties' briefing, the District Court determined that there was no genuine issue of material fact on any of Appellant's claims and granted OneWest's traditional motion for summary judgment. This appeal followed.

## ISSUES PRESENTED

1.  Did the District Court err in granting OneWest summary judgment where the record establishes that Appellant was not a borrower, the loan was due and payable following the death of Appellant's husband, and OneWest is authorized to foreclose its lien on the property because the loan was not repaid?

## STATEMENT REGARDING ORAL ARGUMENT

OneWest does not believe oral argument is necessary or would be of any benefit to this Court. This appeal turns on whether OneWest had authority to foreclose its property lien after the sole borrower passed away and the loan was not repaid. A small number of documents within the record—including the Note, Deed of Trust, and Warranty Deed—conclusively establish that OneWest had such authority and that the District Court's summary judgment order was proper. Appellant has failed to provide any evidence that reasonably calls this authority into question. As the key issue before this Court is fundamental and simple, as well as easily determined based on the District Court's record, OneWest believes that oral argument is unnecessary.

## I.    STATEMENT OF FACTS

The facts relevant to this appeal are undisputed:

## A.    Appellant's Husband Obtained a Reverse Mortgage in 2005

Plaintiff/Appellant Carolyn Larsen ("Appellant") married Otis Larsen ("Mr. Larsen") in 1987. The couple purchased a home located at 918 N. Meyer Street, Sealy, Austin County, Texas 77474 (the "Property") in mid-2004.

On February 14, 2005, Mr. Larsen obtained a loan from Financial Freedom Senior Funding Corporation ("FFSFC") (the "Loan"). C.R. 102-07; 216-24. The Loan was an adjustable rate home equity conversion mortgage ("HECM"). HECMs are a type of reverse mortgage that permits eligible homeowners to convert equity in their home into cash and forgo any loan payments until they either pass away or move. The Federal Housing Administration ("FHA"), which insures HECMs, requires that all borrowers must be at least 62 years old. *See* 12 U.S.C. §1715z-20(b)(1). At the time Mr. Larsen obtained the Loan in 2005, Appellant was only 58 and thus ineligible to be a borrower. *See* C.R. at 5.

In connection with obtaining the Loan, Mr. Larsen executed a loan agreement ("Loan Agreement"), a note ("Note"), and a deed of trust ("Deed of Trust"), among other documents.

## 1.    The Loan Agreement.

The Loan Agreement sets out the terms and conditions of the Loan. C.R. 216-24. The Loan Agreement defines Mr. Larsen as the sole "Borrower." C.R.

1

216. Likewise, Mr. Larsen is the only person who signed the Loan Agreement as a Borrower. C.R. 223. Pursuant to the Loan Agreement, FFSFC loaned Mr. Larsen $65,760 in consideration for him executing the Note and Deed of Trust. *See* C.R. 217 at ¶2.1; App.'s Br. at 5.

## 2. The Note.

The Note represents Mr. Larsen's agreement to repay the Loan. C.R. 102 at ¶2. The Note defines the "Borrower" as "each person signing at the end of this Note." C.R. 102. Like the Loan Agreement, Mr. Larsen is the only signatory on the Note and thus the only person who was entitled to receive the Loan proceeds or obligated to repay them. C.R. 107. In exchange for receiving the Loan proceeds, Mr. Larsen promised to repay the principal and interest on the Loan when it became due. C.R. 102 at ¶2. The Note stipulated that the Loan would become due upon Mr. Larsen's death (among other events). C.R. 105 at ¶7(A).

## 3. The Deed of Trust.

The Deed of Trust secures repayment of the Loan by granting a lien on the Property. C.R. 108-09. In the event of default, the Deed of Trust authorizes the lender to foreclose the Property under a power of sale. C.R. 114 at ¶22. Failure to repay the Loan when due constitutes a default and triggers the lender's right to foreclose. C.R. 110 at ¶1. Mr. Larsen granted the Deed of Trust to FFSFC[1] on

---

[1] The Deed of Trust provides that "The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of the Lender." C.R. 113 at ¶16. It is

2

February 14, 2005. C.R. 117. Appellant also signed the Deed of Trust, as required by the Texas Family Code and Texas Constitution. *See id.* The Deed of Trust defines her and Mr. Larsen as the trustors, which term is then referred to elsewhere in the document as the "Borrower." C.R. 108.

## B. Appellant Executed Multiple Loan Documents Establishing that She Was Not a Borrower

First, Appellant signed a document entitled "Non-Borrower Spouse Ownership Interest Certification" during the closing of the Loan ("Non-Borrower Spouse Certification"). C.R. 123. Appellant expressly acknowledged that Mr. Larsen was entering into a reverse mortgage and that she did not have an ownership interest in the Property. *Id.* Appellant also acknowledged that if Mr. Larsen predeceased her and the Loan was not repaid, the Property "may need to be sold to repay Reverse Mortgage debt incurred by my spouse" and that she "may be required to move from [her] residence." *Id.* Appellant signed the Certification as the "Non-Borrower Spouse" and initialed each paragraph under the same heading. Conversely, Mr. Larsen executed the document as the "Borrower" and initialed each paragraph as same. *Id.*

---

undisputed that OneWest currently holds the Deed of Trust (and the Note). App.'s Br. at 5. Indeed, OneWest purchased certain of FFSFC's assets, including Mr. Larsen's Loan, in 2009. C.R. 124-215; *see* C.R. 83-84. Thus, OneWest is entitled to the same rights as FFSFC under the Deed of Trust, including the right to enforce the debt through foreclosure of the Deed of Trust. *See* C.R. 113 at ¶16.

3

Second, Appellant executed a Waiver of Homestead Rights. C.R. 122. This Waiver differentiated Appellant's status (as the non-borrower) from her husband's (as the borrower), explaining that "[s]hould the borrowing spouse or resident predecease you, you may be required to move and sell your home to repay the Reverse Mortgage debt . . . ." *Id.* Appellant also signed the Waiver as the "non-borrower spouse or resident," just as she had in the Non-Borrower Spouse Certification. *Id.*

Third, Appellant granted all of her interest in the Property to Mr. Larsen via a notarized Special Warranty Deed. C.R. 120-21. Appellant testified during the temporary injunction hearing that she actually intended to convey her interest to Mr. Larsen when she executed the Deed. C.R. 236 at 23:7-12. Appellant acknowledged in the Deed that she had received sufficient consideration from Mr. Larsen for her conveyance. C.R. 120.

## C. Appellant Knew She Was Not a Borrower When Mr. Larsen Obtained the Loan

During the temporary injunction hearing, Appellant testified that she was told on multiple occasions by the mortgage broker that she was not going to be a borrower on her husband's loan. C.R. 236 at 21:1-22:7. Appellant also confirmed this is why she did not sign the Note. C.R. 237-38 at 28:9-29:2. She further admitted that, while she and Mr. Larsen (allegedly) intended to add her to the Loan once she turned 62, this was never actually done. C.R. 236 at 24:11-15.

4

**D.    The Loan Was Not Repaid Following Mr. Larsen's Passing and Foreclosure Proceedings Were Initiated**

Mr. Larsen passed away in November 2010. C.R. 237 at 25:22-24. As a result, the Loan became due and payable in full. C.R. 105 at ¶7(A). Despite receiving notice that the Loan was due, the Mr. Larsen's estate failed to repay the Loan as required, resulting in a default of the Loan's terms. C.R. 102-03 at ¶¶2, 4(A); C.R. 110 at ¶1; *see* App.'s Br. at 9. Pursuant to the Deed of Trust, OneWest's only remedy upon default was foreclosure of the Property lien. C.R. 112 at ¶10. OneWest therefore scheduled the Property for foreclosure on February 7, 2012.

**E.    Appellant Sued OneWest In an Effort to Stop Foreclosure**

Appellant initiated the underlying lawsuit on February 3, 2012. C.R. 3-36. Appellant's suit did not state an affirmative claim against OneWest, but rather requested temporary injunctive relief and sought declarations that the Special Warranty Deed is void and that either the Deed of Trust is void or, alternatively, that Appellant was a borrower on the Loan and that the Property cannot be foreclosed until her death. C.R. 281-92.

**F.    The District Court Granted OneWest's Motion for Summary Judgment and Entered Final Judgment Against Appellant**

OneWest moved for traditional summary judgment on October 24, 2013 ("Summary Judgment Motion"). The parties both fully briefed the issues and presented evidence, and a hearing on OneWest's Summary Judgment Motion was

5

held on February 18, 2014. *See* C.R. 442. Afterward, the District Court found that there was no genuine issue of material fact regarding Appellant's non-borrower status or the validity and enforceability of the Deed of Trust. *See id;* C.R. 456-57.[2] Accordingly, the District Court granted OneWest's Summary Judgment Motion and entered final judgment against Appellant. C.R. 442, 456-57. This appeal followed.

## II.    SUMMARY OF ARGUMENT

Appellant knows she is not a borrower. In addition to admitting this during the temporary injunction hearing, Appellant did not sign the Loan Agreement or Note, which both expressly provide that Mr. Larsen was the only borrower. Indeed, Appellant was several years too young to even qualify as a borrower at that time. Further, Appellant executed multiple documents as the "non-borrower spouse" and acknowledged that the Loan would become due upon her husband's death and that she may be required to move if the Loan was not repaid. Now, despite having executed these disclosures, Appellant urges the Court to ignore the plain meaning of the loan documents—and Appellant's admitted understanding of the terms of the reverse mortgage—to effectively set aside or reform the loan transaction.

---

[2] The District Court modified its Summary Judgment Order on March 6, 2014 to clarify that (1) Appellant's claims against OneWest were being denied and (2) that Appellant's claims against the other Defendants were being severed and assigned a new cause number so that the judgment in favor of OneWest became final. C.R. 456-57.

The arguments advanced by Appellant in support of her position fail both as a matter of law and fact. Because the Property was her husband's homestead, Appellant was required by Texas law to sign the Deed of Trust; however, Appellant's description as a borrower on the Deed of Trust does not make her so. Under Texas law, descriptive labels in a contract do not determine or control the legal status of the parties. Courts must interpret the contract based on the intent of the parties, evidenced by the contract as a whole. When all of the loan documents are read together as a single contract—as required by Texas law—it is patently clear that none of the parties to the contract (or even Appellant) intended or believed Appellant to be a borrower on the Loan.

Appellant alternatively contends that she should be treated as a borrower because the Waiver of Homestead Rights and Special Warranty Deed are allegedly ineffective and/or void. This argument is also without merit. First, contrary to Appellant's arguments, a person in Texas may waive her homestead rights so long as her intent to do so was clear, decisive and unequivocal. Here, Appellant's execution of the Waiver of Homestead Rights easily satisfies this standard. Likewise, the Special Warranty Deed is not invalidated by Appellant's *ipse dixit* testimony that the Deed was a sham or that she did not actually receive any consideration. Such statements contradict the plain (notarized) language of the Deed, as well as her own testimony that she actually intended to convey her

7

interest to Mr. Larsen when she executed the Deed. In any event, the validity of these documents does not impact the Court's determination. Even if Appellant owned the Property as her homestead, the Loan was still valid, she still was not a borrower and OneWest still has the right to foreclose due to the default.

Appellant also incorrectly asserts that she must be considered a borrower because the FHA cannot insure an HECM unless repayment of the loan is deferred until both homeowners die. The regulation on which she relies does not compel a lender to include ineligible borrowers on an HECM. Instead, it only governs the FHA's obligation to insure the lender based upon the terms of the loan. Thus, whether the FHA will insure this Loan is wholly irrelevant to the question of whether OneWest could accelerate the Loan upon Mr. Larsen's death.

None of Appellant's arguments establish that the District Court erred by dismissing her claims. Appellant has not provided any evidence that creates a genuine issue of fact regarding the validity of the loan documents or OneWest's right to accelerate the loan or foreclose following default. The undisputed record establishes that the District Court properly granted OneWest's Summary Judgment Motion. Accordingly, the District Court's judgment must be affirmed.

## III.   ARGUMENT AND AUTHORITIES

### A.   Standard of Review

#### 1.   Traditional summary judgment standard.

Orders granting motions for summary judgment are reviewed de novo. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). When the District Court's order granting summary judgment does not specify the grounds relied upon, reviewing courts must affirm the order if any of the theories advanced are meritorious. *Mulvey v. Mobil Producing Tex. & N.M., Inc.*, 147 S.W.3d 594, 604 (Tex. App.—Corpus Christi 2004, pet. denied).

A traditional summary judgment motion is properly granted under Tex. R. Civ. P. 166a(c) when the movant establishes that there are no genuine issues of material fact on at least one element of an opposing party's claim or pleads and/or conclusively establishes each element of its own affirmative defenses. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

#### 2.   Whether the record contains "some evidence" to support Appellant's arguments is not the focus of the Court's review.

Appellant contends the District Court erred because the record contains "some evidence" to support certain of her arguments. *See* App.'s Br. at 2. This is not the applicable standard of review, however. Had OneWest moved for summary judgment under a no-evidence standard, Appellant's "some evidence"

9

arguments would have merit here. *See* Tex. R. Civ. P. 166a(i); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). But OneWest only moved for (and the District Court granted) traditional summary judgment. C.R. 78-244, 442, 456-57. As a result, this Court must only determine whether the record supports the District Court's ruling that there were no genuine issues of material fact on Appellant's claims. *See, e.g., Johnson*, 891 S.W.2d at 644.

## B. The Record Establishes That Appellant Is Not a Borrower

### 1. Appellant is not a party to the Loan Agreement or Note.

The Loan Agreement and the Note establish the mutual promises made by each party to the Loan. *See* C.R. 102-07, 216-24. In particular, they set forth who is entitled to receive the loan proceeds and the conditions for repayment (among other things). *See id.* Both the Loan Agreement and Note were signed by Mr. Larsen only. C.R. 107, 223. In addition, both provide that Mr. Larsen is the only borrower. C.R. 102, 216. Neither Appellant's name nor signature appear anywhere on either document. *See* C.R. 102-07, 216-24. Accordingly, Mr. Larsen was the only person to whom funds were loaned or who was under any obligation to repay them. *See id.* Simply put, Appellant did not "borrow" anything.

### 2. Appellant was ineligible to be a borrower due to her age.

To be eligible to obtain an HECM, the FHA requires that all borrowers or co-borrowers be 62 years of age or older at the time of application/execution (among other things). *See* 12 U.S.C. §1715z-20(b)(1); 24 CFR §206.33; HUD

10

PUBLICATION, FHA REVERSE MORTGAGES (HECMs) FOR SENIORS. As a result, FFSFC (and any other entity originating reverse mortgages) was prohibited by federal law from providing an HECM to anyone under the age of 62. In this case, Appellant was well-under the age of 62 at the time Mr. Larsen obtained the HECM in 2005. *See* C.R. at 5. Accordingly, pursuant to mandatory FHA borrower eligibility requirements, Appellant was ineligible—as a matter of law—to be either a borrower or a co-borrower on the HECM. If Appellant had tried to be a borrower on the Loan, the Loan would not (and could not) have been approved. Thus, to adopt Appellant's construction of the term "borrower" would subvert the federally-mandated conditions necessary for origination of the HECM.

### 3. Appellant testified she is not a borrower.

At the temporary injunction hearing, Appellant was asked by her attorney if the mortgage broker had explained the reverse mortgage to her. She answered:

> Yes . . . . He said we could do it, but I could not. My husband could not get all the money unless I signed the papers over, my part. . . . And that's the only reason I signed those papers knowing that when I reached 62 . . . we could go back to [the broker] and get papers redone and I could be put back on the mortgage.

C.R. 236 at 21:16-22:11. Appellant's testimony not only establishes that she knew she was ineligible due to her age, but also that she knew she had to take additional steps to become a borrower upon turning 62. Appellant later testified that she never took those steps, even after turning 62. C.R. 236 at 24:11-15.

11

**4.    Appellant signed multiple loan documents as the "non-borrower."**

Mr. Larsen and Appellant both signed the Waiver of Homestead Rights and the Non-Borrower Spouse Certification. C.R. 122-23. Tellingly, Mr. Larsen signed each as the "borrower" and Appellant signed each as the "non-borrower spouse." *Id.* Further, Appellant initialed each paragraph of the Non-Borrower Spouse Certification under the "non-borrower spouse" heading (whereas Mr. Larsen initialed the same paragraphs as the "borrower"). C.R. 123. In addition, Appellant acknowledged in both documents that she understood her husband was the sole borrower and that she may have to move from the Property if he predeceases her and the Loan is not repaid. C.R. 122-23.

**C.    Appellant's Description As a Borrower on the Deed of Trust Did Not Alter Her Legal Status or Prevent OneWest from Accelerating the Loan Following Mr. Larsen's Death**

**1.    As an initial matter, Texas law required Appellant to sign the Deed of Trust.**

Even though Mr. Larsen was the only borrower, FFSFC could not have issued him the Loan unless Appellant joined in granting the Deed of Trust. The Texas Constitution, Article XVI, Section 50(k)(1) requires all reverse mortgages to be secured by a voluntary lien on the borrower's homestead. Further, this lien must be "created by a written agreement with the consent of each owner and each owner's spouse." TEX. CONST. ART. XVI §50(k)(1). Here, Mr. Larsen was the exclusive owner of the homestead Property as a result of the Special Warranty

12

Deed. *See* C.R. 120-21. The Texas Constitution thus mandated that his spouse—Appellant—join him in granting the Deed of Trust. *See* TEX. CONST. ART. XVI §50(k)(1).

Likewise, any time a homestead is encumbered by a lien, the Texas Family Code Section 5.001 requires both spouses to join in the encumbrance, regardless of "[w]hether the homestead is the separate property of either spouse or community property." Therefore, as Mr. Larsen's spouse, Appellant was also required by the Texas Family Code to sign the Deed of Trust.

### 2. Applying the rules of contract construction to the Loan documents, it is indisputable that Mr. Larsen was the only borrower.

Despite executing multiple documents as the non-borrower spouse, not signing the Note or Loan Agreement, and even admitting to the District Court that she was not a borrower, Appellant submits that she should nevertheless be treated the same as a borrower because one line in the Deed of Trust labels her and Mr. Larsen as the "Borrower." *See* App.'s Br. at 11. The District Court properly determined, however, that this alone was insufficient to create a genuine issue of material fact regarding whether OneWest could accelerate the Loan upon Mr. Larsen's death. C.R. 442, 456-57. The established rules of contract construction support the District Court's determination.

13

### (a) The Court must consider all of the loan documents when determining the parties' intent.

It is axiomatic under Texas law that a court's primary goal in interpreting a written contract is to determine the intention of the parties based on the plain language of the documents. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987).

Appellant's evidence that she is a borrower is limited to just one line in one of the documents comprising this loan transaction. This "evidence," however, may not be considered in a vacuum. For more than a century, Texas law has recognized that all documents executed as part of a loan transaction must be considered as part of the contract between the parties. As stated by the Texas Supreme Court, "all the instruments executed at the same time, and in regard to the same matter, must be held in legal effect as but one instrument. Under the repeated decisions of this court, the [Deed of Trust and Note], taken together, evidence but an executory contract by [plaintiff] to sell the land in controversy to [defendant]." *McKelvain v. Allen*, 58 Tex. 383, 387 (1883); *see also Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981) ("The general rule is that separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together."); *Braniff Inv. Co. v. Robertson*, 81 S.W.2d 45, 50 (Tex. Comm'n App. 1935) (quoting *McKelvain*); *Bierwirth v. BAC Home Loans Servicing, L.P.*, 2012 WL

14

3793190 (Tex. App.—Austin Aug. 30, 2012, no pet.) ("the note and deed of trust must be read together when evaluating their provisions"); *Warren v. Bank of Am., N.A.*, 2012 WL 3020075 (N.D. Tex. June 19, 2012) ("the note and deed of trust must be read together in evaluating the terms and construed together as a single instrument").

Appellant submits that while "[t]his may ordinarily be the rule. . . . this is not the ordinary situation; this was a reverse mortgage that mandates the existence of a written agreement which must be consented to by both the husband and a the wife." App.'s Br. at 25-26. But Appellant does not establish why this requirement forces the Court to deviate from the century-old rule that all of the loan documents must be construed as a single contract, and indeed it should not.

Even focusing (as Appellant would like the Court to do) solely on the Deed of Trust, Appellant's proffer does not support her claim that the parties intended her to be a borrower. Every substantive and/or operative use of the word borrower in the Deed of Trust plainly refers only to Mr. Larsen. For example, the first paragraph of the Deed of Trust states:

> Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Adjustable Rate Note dated the same date as this Security Instrument ("Note").

15

C.R. 108-09. The only person who borrowed money and agreed to repay it was Mr. Larsen; he is the sole signatory on both the Note and the Loan Agreement. C.R. 102-07, 216-24. The provisions of the Deed of Trust clearly were not intended to apply to Appellant.

### (b)    In a situation where the terms of the Deed of Trust and Note conflict, the terms of the Note prevail.

Appellant also contends that the terms of the Deed of Trust should trump those of the Note. App.'s Br. at 26. This position squarely conflicts with well-established Texas law. *Pentico v. Mad-Wayler, Inc.*, 964 S.W.2d 708, 715 (Tex. App.—Corpus Christi 1998, pet. denied) ("where there is conflict between the terms of the note and the language of the security instrument, whether deed of trust or mortgage, the latter must yield."); *In re Tucker*, 391 B.R. 404, 409 (Bankr. S.D. Tex. 2008) ("if there is a conflict between the note and the deed of trust, the note prevails"). Thus, to the extent there is any conflict between the Note and the Deed of Trust regarding when OneWest could properly accelerate the debt, the terms of the Note prevail as a matter of law. Accordingly, because the Loan became due upon the death of all borrowers and the Note provides that Mr. Larsen is the sole "borrower," the District Court did not err in determining that OneWest could accelerate the debt after he passed away.

16

### (c) A single descriptive label does not alter the clear intention of the parties.

The only reference in the Deed of Trust to Appellant is at the beginning when she and Mr. Larsen are described as Trustors, which term is then relabeled as "borrower." This description is not controlling, however. It is axiomatic that descriptive labels in a contract do not determine or control the legal status of the parties. Indeed, "[w]ords used by the parties in a contract do not necessarily control the substance of the relationship, nor do the terms used by the parties in referring to the arrangement." *Stephanz v. Laird*, 846 S.W.2d 895, 899 (Tex. App.—Houston [1st. Dist.] 1993, writ denied); *see also Ingram v. Deere*, 288 S.W.3d 886, 900 (Tex. 2009) ("The terms used by the parties in referring to the arrangement do not control."); *Coastal Plains Dev. Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex. 1978) ("when the record demonstrates that the actual effect of the arrangement resulting from the agreement is to create a status different from that stated in the language of the contract, the parties' designation will not control.")

Instead of relying on descriptive labels, as Appellant does here, courts are instructed to look beyond the labels to the operative contractual clauses of the agreement to determine the legal status of the parties and the agreement. *Neece v. A.A.A. Realty Co.*, 322 S.W.2d 597, 600 (Tex. 1959) ("greater weight must be given to the operative contractual clauses of the agreement, for 'An instrument is

17

that which its language shows it to be, without regard to what it is labeled'"); *Coastal Plains Dev. Corp.*, 572 S.W.2d at 287 (Tex. 1978) (the terms of the agreement control over the parties' designations); *Fed. Deposit Ins. Corp. v. Attayi*, 745 S.W.2d 939, 946 (Tex. App.—Houston [1st. Dist.] 1988, no writ) (a contract is defined by it terms without regard to the parties' labels).

If the descriptive labels are ignored and the clauses in the Note and Deed of Trust are construed together, it is readily apparent that the only intended borrower was Mr. Larsen. He is the only person entitled to receive the loan proceeds and the only person obligated to repay them. Moreover, this interpretation harmonizes the identical acceleration clauses in the Note and Deed of Trust, whereas Appellant's construction would effectively moot the acceleration clause in the Note. Accepting Appellant's position would violate this Court's obligation when interpreting a contract to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

### (d) The Court must attempt to harmonize the provisions of the Note and Deed of Trust.

Both the Note and Deed of Trust provide that OneWest "may require immediate payment in full of all outstanding principal and interest if . . . [a]ll Borrowers die." C.R. 105 at ¶7(A); 111 at ¶9(a)(i). Because Mr. Larsen was the sole borrower on the Note, Appellant cannot dispute that OneWest was entitled to

18

require immediate repayment of the Note upon his death. Appellant's construction of Paragraph 9(a)(i) of the Deed of Trust, however, means that OneWest must nevertheless wait until Appellant also passes away before OneWest may require immediate repayment. In other words, Appellant's position, if true, means that OneWest's acceleration of the debt was both permitted (under the Note) and prohibited (under the Deed of Trust). Plainly, a contractual construction which both permits and prohibits the same act is an absurdity. The Court should instead interpret these provisions as they were intended—that is, that the Loan became due and payable upon (only) Mr. Larsen's death. *See Coker*, 650 S.W.2d at 393.

**(e) Courts generally may not rewrite contractual provisions.**

Appellant's construction would also require this Court to rewrite operative sections of the Note and Deed of Trust contrary to the rules of contractual construction. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) ("[W]e may neither rewrite the parties' contract nor add to its language."). Indeed, Appellant's construction would effectively rewrite the Note such that OneWest could not require repayment until both Mr. Larsen and Appellant die, even though Appellant is not a party to the Note. Likewise, it would also effectively rewrite the Note to impose the repayment obligations on Appellant, for which neither she nor OneWest bargained.

Simply put, there is no conceivable way that the Note and Deed of Trust,

19

together with the ancillary loan documents which make up the parties' agreement, can be read to infer that the parties intended anything other than that Mr. Larsen would be the sole borrower on the loan. This becomes particularly apparent when coupled with the fact that Appellant repeatedly acknowledged (and executed numerous documents reflecting) that she was a non-borrower spouse—both when Mr. Larsen applied for the loan and again when the loan closed.

Applying these well-settled maxims of contract construction to all of the loan documents comprising the HECM loan—which, under Texas law, must be construed together in ascertaining the parties' intent—lead to the inescapable conclusion that Appellant was not an intended borrower on the loan. Accordingly, the District Court properly dismissed Appellant's claim that OneWest must wait until both she and Mr. Larsen passed away before accelerating the debt.

**D.    The Waiver of Homestead Rights and Special Warranty Deed Are Valid**

Appellant claims throughout her brief that both the Waiver of Homestead Rights and the Special Warranty Deed are invalid and, as a result, she maintained her interest in the Property and must be considered a borrower. Appellant is incorrect that a Texas homeowner cannot waiver her homestead rights, however. Similarly, Appellant's ex post facto claim that the Special Warranty Deed is invalid is equally without merit.

## 1. Texas law permits waiver of homestead rights.

Texas courts have repeatedly and consistently held that homestead rights may be waived. *See Williams v. Williams*, 569 S.W.2d 867, 870 (Tex. 1978); *Ferguson v. Ferguson*, 111 S.W.3d 589, 598 (Tex. App.—Fort Worth 2003, pet. denied); *Hunter v. Clark*, 687 S.W.2d 811, 815 (Tex. App.—San Antonio 1985, no writ). Waiver is defined as the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right. *Ferguson*, 111 S.W.3d at 598; *Brandywood Housing, Ltd. v. HCAD*, No. 14-08-00404-CV, 2010 WL 1752334 (Tex. App.—Houston [14th Dist.] May 4, 2010, no pet.). Any intent to waive must be clear, decisive and unequivocal. *Ferguson*, 111 S.W.3d at 598; *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996).

At least one recent Texas case has found that a party's execution of a document analogous to the Waiver of Homestead Rights at issue here constituted waiver as a matter of law. *See Thompson v. Kerr*, No. 14-08-00978-CV, 2010 WL 2361636 (Tex. App.—Houston [14th Dist.] June 15, 2010, no pet.). In Thompson, the Fourteenth Court of Appeals upheld summary judgment on an affirmative defense of waiver where the parties had signed a settlement agreement waiving their claims against each other. The Court succinctly explained that "here, [defendant's] waiver argument rest[ed] solely on the language of the Settlement Agreement" which, by its very terms, made clear that plaintiffs' had signed the

21

settlement agreement with full knowledge of their potential claims and intent not to assert or bring same.

### 2. The Waiver of Homestead Rights is valid.

Appellant's execution of the Waiver of Homestead Rights more than meets this standard. *See* C.R. 122. She testified that she willingly signed the Waiver and understood that she needed to do so in order for her husband to obtain the loan proceeds. C.R. 238-39 at 32:8-33:14. As in Thompson, Appellant had full knowledge of the consequences of executing the Waiver of Homestead Rights. The Waiver itself spelled out, by its very terms, that in signing the document Appellant was giving-up her homestead rights and could be forced to move for her home. C.R. 122. Appellant clearly, decisively and unequivocally relinquished her homestead rights in order for her husband to obtain the reverse mortgage loan. *See Ferguson*, 111 S.W.3d at 598; *Tenneco Inc.*, 925 S.W.2d at 643. Simply put, Appellamt cannot now complain that, contrary to her express actions, she "intended" to act differently.

### 3. The Special Warranty Deed is valid.

Appellant contends that the Special Warranty Deed is invalid because (1) she did not actually intend to convey her interest to her husband and (2) she did not receive consideration. App.'s Br. at 19-23. Appellant's own testimony, plus the plain language of the Deed itself, defeat her arguments.

22

## (a) Appellant testified she actually intended to convey her interest to her husband.

According to Appellant, the standard for determining whether such deeds are valid is "whether the grantor actually intended to sell the homestead." App.'s Br. at 20. Appellant testified this was precisely her intention:

> Q. (By Mr. Levine) Now, did you sign – did you sign a deed conveying your husband the interest in the property?
> A. Yes.
> Q. And was it your intent actually to convey him that interest?
> A. Yes.

C.R. 236 at 23:7-12. This testimony alone is fatal to Appellant's argument that she did not actually intend to sell her interest to her husband.

## (b) The Deed is supported by consideration.

Appellant also claims the Deed is void because she did not receive any consideration from her husband for her interest. App.'s Br. at 10. As with her prior argument, this convenient, ex post facto claim is defeated by her own statements. Appellant acknowledged in her notarized Deed that she granted her interest "[f]or and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged . . . ." C.R. 120. Appellant cannot now claim, against the plain and unambiguous face of the Special Warranty Deed, that she did not receive any consideration. Her only "evidence" to support her assertion is her *ipse dixit* statement that can never be proven. The District Court properly determined this

23

was insufficient to create a genuine issue of material fact regarding the validity of the Deed.

Further, the gravity of Appellant's statements should not be lost on this Court. Appellant tells the Court that she had no intention of honoring the Special Warranty Deed at the time she signed it. Thus, she concealed her true intention and signed the document so she and her husband could obtain loan proceeds. As a party requesting that the Court exercise its powers of equity to "modify the Loan so that the indebtedness is deferred" until her death, Appellant's fraudulent conduct bars her from obtaining equitable relief here. *See Skelton v. Washington Mut. Bank, F.A.*, 61 S.W.3d 56, 61 (Tex. App.—Amarillo 2001, no pet.) (after noting that plaintiff and her husband had concealed their marriage from the bank to obtain the loan, the Court held: "[B]ecause Skelton and her husband agreed that Skelton would not also apply for the loan because her credit history was not favorable, she is not entitled to any relief because her acts in concealing her interest.").

**E.      Even if the Waiver of Homestead Rights and/or the Special Warranty Deed Are Invalid, OneWest Still Had the Right to Accelerate the Debt Upon Mr. Larsen's Death.**

The purpose of Waiver of Homestead Rights and the Special Warranty Deed was to ensure FHA's first lien priority on the Property. The FHA requires that the HECM lender's lien be the first lien on the property at issue, and that other liens

and claims (including potential homestead claims by non-borrower spouses) be satisfied or released. Because Appellant was a non-borrower spouse, in order for Mr. Larsen to proceed with securing the HECM, Appellant was required to give-up her homestead rights by deeding her interest in the Property to Mr. Larsen. Absent Appellant's relinquishment of her homestead rights—because she was under the age of 62—the FHA would not have permitted Mr. Larsen to procure the HECM.

Thus, Appellant's argument that, if she retained her ownership and homestead rights, she must be a considered a borrower for the Deed of Trust to comply with the Texas Constitution misses the mark. *See* App.'s Br. at 11. There is no requirement in the Texas Constitution or otherwise that all owners of the Property must be a party to the reverse mortgage for it to be valid (and, tellingly, Appellant has pointed to none). *See* TEX. CONST. ART. XVI §50(k).

Accordingly, whether Appellant actually waived her homestead rights and/or deeded her property interest to her husband is irrelevant to whether OneWest may foreclose the Property. *Skelton v. Washington Mut. Bank, F.A.*, 61 S.W.3d 56 (Tex. App.—Amarillo 2001, no pet.) is directly on point. There, plaintiff's husband bought a house during the marriage using a purchase money loan. *Id.* at 58. Plaintiff's husband was the sole borrower on the loan. *Id.* This loan was evidenced by a note and secured by a deed of trust. *Id.* The home was Plaintiff and her husband's homestead and the couple's community property. *Id.* at 59.

25

Following the death of plaintiff's husband, the bank sought to foreclose the deed of trust. *Id.* at 58. Plaintiff filed suit seeking a declaratory judgment that, among other things, her homestead and community property rights in the home prevented the bank from foreclosing its lien. *Id.* The bank prevailed on its motion for summary judgment, and plaintiff appealed. *Id.* The Court of Appeals affirmed the trial court. *Id.* In so doing, the Court first observed that the Texas Constitution expressly permits purchase money liens to encumber homesteads. *Id.* at 60. Next, the Court found that purchase money liens on homesteads were enforceable pursuant to Section 41.001(b) of the Texas Property Code. *Id.* The Court of Appeals therefore concluded that "even if the property became impressed with homestead claims upon its acquisition, the purchase money lien is not invalid or unenforceable under the constitutional provision and is subject to enforcement by the express provisions of section 41.001(b) of the Texas Property Code." *Id.* at 61. Likewise, the Court found that the wife's ownership interest in the property could not stop the lender from foreclosing its lien because the lien was authorized by, and complied with, the Constitution and the Texas Property Code. *Id.*

The same applies here. As with purchase money liens, the Texas Constitution allows reverse mortgage liens to be fixed on homesteads. Tex. Const. art XVI, §§ 50(a)(7), 50(c). And, Texas Property Code 41.001(b)(7) expressly provides that "[e]ncumbrances may be properly fixed on homestead property for . .

26

. a reverse mortgage that meets the requirements of Sections 50(k)-(p), Article XVI, Texas Constitution." Appellant has failed to show how her alleged retention of her homestead rights and/or ownership interest in the Property cause the Loan to violate the law. Thus, while an invalid Special Warranty Deed and/or Waiver of Homestead Rights could potentially cause the Deed of Trust to lose its first lien priority, these documents have no bearing on the validity of the Loan or OneWest's authority to accelerate the debt following the death of Mr. Larsen.

**F.    The Loan's Insurability Has Nothing to Do with Its Validity**

Citing 12 U.S.C. §1715z-20(j), Appellant proclaims the HECM cannot be insured unless acceleration of the debt is deferred until both homeowners die. App.'s Br. at 14. She then suggests that this somehow alters the intent of the parties as evidenced by the documents they signed. Appellant is simply wrong on this point. The statute at issue does not compel a lender to originate a loan containing any particular terms, but rather only governs the FHA's obligation to insure the lender based upon the terms of the loan. Whether the FHA will insure this loan or not is, of course, wholly irrelevant to the question of whether OneWest may foreclose based on the terms of the Loan. In short, this argument is nothing more than a red herring, apparently advanced for the sole purpose of distracting the Court from the real issues in this case.

27

**G.**   **The District Court Did Not Err in Granting OneWest's Summary Judgment Motion**

The evidence in the record plainly supports the District Court's decision. There is no genuine issue of material fact regarding whether (1) OneWest was authorized to accelerate the debt upon the death of all borrowers; (2) Mr. Larsen was the only borrower; (3) OneWest accelerated the debt following Mr. Larsen's death; (4) the debt was not repaid; (5) failure to repay the debt was an event of default; and (6) OneWest initiated foreclosure proceedings upon the default. Likewise, there is no genuine issue of material fact regarding the validity of the Deed of Trust, Special Warranty Deed or the Waiver of Homestead Rights. Therefore, the District Court's Summary Judgment Order was proper. Accordingly, the District Court's judgment must be affirmed.

## IV.   CONCLUSION

For the reasons stated herein, the Court should affirm the District Court's Order Granting OneWest's Traditional Motion for Summary Judgment, as well as grant Appellee such other and further relief, in law or in equity, to which it is justly entitled.

28

Date: April 7, 2015

Respectfully submitted,

*/s/ Thomas M. Hanson*
Thomas M. Hanson
State Bar No. 24068703
thanson@dykema.com
Kevin A. Teters
State Bar No. 24075678
kteters@dykema.com
**DYKEMA GOSSETT PLLC**
1717 Main Street, Suite 4200
Dallas, Texas 75201
(214) 462-6400 – Telephone
(214) 462-6401 – Facsimile

**ATTORNEYS FOR APPELLEE
ONEWEST BANK N.A.**

## CERTIFICATE OF COMPLIANCE

I certify that this Response Brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 6,774 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

DATED:     April 7, 2015

CERTIFIED BY: _/s/ Thomas M. Hanson_
Thomas M. Hanson
Counsel for Appellee OneWest Bank N.A.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF system on Appellant's counsel on April 7, 2015.

_/s/ Thomas M. Hanson_
Thomas M. Hanson